FREEMAN AND SHAW v. THE CITIZENS' NATIONAL BANK.

1.  **Banks and Banking**: COLLECTIONS: DUTY TO BRING SUIT. If it be conceded that a bank having drafts for collection is authorized, without special instructions to do so, to bring suit on the drafts, and that it is its duty so to do when necessary to make collection, yet there can be no negligence in not doing so where the instructions given do not go so far as to authorize a suit, and they are fully obeyed by the bank. And so, where plaintiffs instructed defendant not to return any drafts, but if they were not paid to wire them and await their reply, and defendant did wire them that the drafts were not paid, and did await reply, and the only reply was a letter inquiring whether the drafts had been accepted, and defendants placed the drafts in the hands of an attorney as soon as directed so to do, *held* that it was not liable for negligence, though the action on the drafts was begun too late to be of any avail.

2.  ———: ———: BANK'S RIGHT TO SEEK PRIORITY FOR ITS OWN CLAIMS. A bank, by accepting drafts for collection, does not waive its right to collect its own claims against the drawee, and it may, in making such collection, secure priority by attachment, even though there is nothing left out of which to pay the drafts.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

FILED, JUNE 6, 1889.

ACTION at law to recover for negligence of defendant in the collection of certain drafts. The district court directed a verdict for defendant. Plaintiffs appeal.

*Kauffman & Guernsey*, for appellants.

*C. C. & C. L. Nourse*, for appellee.

BECK, J.—I. The plaintiffs are dealers in oysters and fruits in the city of Baltimore, and for more than a year sold goods to one Price, doing business in Des Moines. These sales were frequent, and, in payment for the goods, plaintiffs drew drafts on Price, payable to defendant's order, and sent this paper to defendant for collection. The drafts were of frequent occurrence. Those sued upon were drawn about weekly. It is not shown how many prior drafts were drawn, or their frequency, but we are authorized to infer that in this regard they were about the same as the drafts involved in this action. On the twenty-ninth of January, 1885, defendant commenced an action by attachment against Price, and levied upon his property. Other attachments followed. Defendant's attachment and the one next in priority exhausted all of Price's property. Defendant's attachment was upon a note given by Price for a debt before existing. The note was executed before the drafts in question were drawn. The plaintiffs, after they had been dealing with Price for a time, sent defendant these instructions: "Do not return any more drafts; but, if not paid, wire us and await our reply." January 27, 1885, plaintiffs received a telegram from defendant in these words: "Have six unpaid drafts on Price." On the next day plaintiffs wrote to defendant in the words: "Are all our drafts accepted? Does Price accept them promptly?

1. BANKS and banking: collections: duty to bring suit.

Please advise." On the night of the twenty-eighth of January defendant first received information which induced it to bring the suit by attachment on the next day. On that day it wrote and telegraphed to plaintiffs advising them that an attachment had been commenced against Price, and that the drafts were returned. But it is not shown that the drafts were enclosed in the letter. We infer they were not, from a fact we shall presently state. Defendant's telegram was answered on the twenty-ninth of January (the day defendant's attachment was issued) in these words: "Hand our drafts to your attorney. Protect our interests." The defendant obeyed this instruction, and an action was commenced by plaintiffs on the drafts on the twenty-ninth of January. We infer the drafts had not been sent to plaintiffs, but were handed to an attorney. At all events the suit was brought as soon after plaintiffs' telegram was received as the papers could be prepared. These facts are established beyond dispute. Indeed, we do not think the parties differ as to any of them.

II. It may be admitted for the purpose of the case that the bank was plaintiffs' agent; but that its agency was special cannot be denied. It was instructed and directed not to return unpaid drafts, but, if the drafts were not paid, "to wire" plaintiffs, and wait reply. Two days before the attachment, defendant obeyed these instructions to the letter. Plaintiffs gave no instructions as to an action, but wrote to defendant inquiring as to the acceptance of the drafts. Now, it cannot be claimed that defendant disobeyed instructions, or failed to pursue the exact course pointed out by plaintiffs. There is no cause for maintaining the action on the ground that defendant disobeyed instructions, or was dilatory or negligent in following them.

III. Counsel for plaintiffs insist that defendant was authorized to bring suit upon the drafts without special authority and instructions from plaintiffs; and that failure to do so was negligence for which it is liable. We may assume that, in the absence of instructions, this position of counsel would be correct. But it cannot be

claimed that, if defendant's omission to commence suit was in accord with instructions given by plaintiffs, it cannot be held for negligence. That the omission to bring an action was in obedience to plaintiffs' instruction cannot, we think, be doubted. The plaintiffs instructed defendant not to return any drafts; but if they were not paid to "wire us" (send a telegram), and "await our reply." Defendant did "wire" plaintiffs on the twenty-seventh that six drafts were unpaid, and did await reply; but no reply at any time was sent defendant requiring a suit or any proceeding whatever; but a letter was sent making inquiry as to the acceptance of the drafts. Defendant was left with no directions to bring suit. It was restricted by the instruction to await directions from plaintiffs, which was done. Surely it was not negligent in obeying plaintiffs' instructions.

IV. It is argued that defendant had no right to enforce its claim against Price, so as to gain priority over plaintiffs; and that, inasmuch as plaintiffs, had they known defendant held a claim against Price, would not have sent to it the drafts, it in effect practiced a fraud upon plaintiffs; and it should not be permitted to take advantage of its priority thus gained. But defendant undertook no other duty than the collection of the drafts, and to obey instructions pertaining thereto. It was not the guarantor for Price. It did not undertake to report as to his responsibility or solvency. In short, its duty was that of a bank receiving paper for collection. It cannot be admitted, as is contended by counsel, that the indebtedness of Price to defendant forbade it to enforce its claim, so as to gain priority over plaintiffs. Surely a bank may discount paper, and retain the right to hold collections against the maker of the paper, without surrendering its rights of priority gained by diligence. As a matter of fact, many of the business men of the country, against whom collections are sent to banks, are customers of such banks, depositing money and discounting their own paper as the necessities of their business demand. It has never been supposed

<div style="margin">2. bank's right to seek priority for its own claims.</div>

that banks must concede priority to paper sent them for collection as to their own claims against the maker of such paper, under such a state of facts as we have in this case.

V. These views lead us to the conclusion that, upon the undisputed evidence in the record, the plaintiffs cannot lawfully recover. The district court, therefore, rightly directed a verdict for defendant. Our conclusion as to facts renders the consideration of the questions of law discussed by counsel unnecessary. These questions are interesting, and are presented with learning and ability, but the rules of the law involved in them are not applicable to the facts of the case. We have considered all questions in the case which we are required to determine, and reach the conclusion that the judgment of the district court ought to be        AFFIRMED.