THE FIRST NATIONAL BANK OF ABILENE V. D. W. NAILL *et al.*

|       |      |
|-------|------|
| 52    | 211  |
| 53    | 721  |

1. CHATTEL MORTGAGE, *When not Fraudulent.* It is not a fraud on other creditors for one having a valid claim to obtain security for the amount actually due by chattel mortgage, where no more property is covered than is necessary to secure the debt.

2. BANK, *Protecting its Own Interest.* A bank having a claim against an insolvent firm, which is consulted by a firm of other creditors with reference to collecting and securing their claim, is not legally bound to disclose the existence of its claim to such firm, but may keep silent and protect its own interest, provided it is guilty of no fraudulent conduct, and does nothing more than is necessary to its own protection.

*Error from Dickinson District Court.*

THE *First National Bank of Abilene,* as plaintiff, brought this action against *D. W. Naill,* as sheriff of Dickinson county, and Lawrence, Manning & Cushing, to recover the value of a stock of boots, shoes, and other merchandise, claiming under a chattel mortgage executed by M. P. Shearer & Co. on the 4th of June, 1888, to secure a note for $4,444, and alleging the wrongful conversion thereof by the defendants. Defendant Naill answered, alleging that the mortgage to plaintiff was given to defraud, hinder and delay the creditors of M. P. Shearer & Co., and that, as sheriff, he had levied six writs of attachment, each having duly come into his hands, on the property in controversy. Lawrence, Manning & Cushing also answered, denying that Shearer & Co. were indebted to the plaintiff, and alleging that Shearer & Co. were indebted to them in about the sum of $1,586.50, and that the

bank was, and had been, their agent for the collection of their claim; that plaintiff, while acting as their agent, had colluded with Shearer & Co. to defraud them, and to hinder and delay them in the collection of their debt; and that they had caused the property to be attached to satisfy their claim. The case was tried with a jury, and a general verdict rendered in favor of the defendants. Three special questions were also answered — one submitted by plaintiff, as follows:

"What amount did M. P. Shearer & Co. owe the plaintiff on the 4th day of June, A. D. 1888? Ans. $4,444."

And two by defendants:

"1. Was it a part of the inducement of the plaintiff in taking the mortgage to enable M. P. Shearer & Co. to accomplish a preference of creditors? A. Yes.

"2. Was it part of the inducement of plaintiff in taking the mortgage to enable M. P. Shearer & Co. to place their property beyond the reach of creditor or creditors not sustaining confidential relations with M. P. Shearer & Co.? A. Yes."

A motion for a new trial was overruled, and judgment entered in favor of the defendants on the verdict. The evidence tends to show that the value of the stock of goods was about $5,000. The plaintiff *Bank* brings the case here.

*Stambaugh & Hurd*, for plaintiff in error:

Two questions are presented upon the facts as they appear in this record: First, was the mortgage made to the plaintiff in error by M. P. Shearer & Co. fraudulent as to the creditors of M. P. Shearer & Co. generally? Second, did the plaintiff in error sustain such relation to Lawrence, Manning & Cushing, defendants in error, as would prevent it from securing its own claim to the exclusion of Lawrence, Manning & Cushing? If these questions must be answered in the negative, then the judgment herein should have been for the plaintiff and not for the defendants, and this case should be reversed.

The cross-examination of Mr. Hayes by Mr. Burton traces the indebtedness from its inception to the note for $4,444,

and none of this testimony is attempted to be contradicted ;
therefore, the fact is that M. P. Shearer & Co. owed the plain-
tiff bank the money for which this note is given, and for the
indebtedness of the firm and on account of the business in
which they were engaged.  It follows that the debt was a
*bona fide* debt, and, as to the general creditors of M. P.
Shearer & Co., the bank had a right to take the mortgage and
secure the debt, if taken in good faith and for such purpose.
The bank took the mortgage; it filed the same in the office of
the register of deeds; it went into immediate possession of the
stock; and there is no attempt to show that there was any
agreement, understanding or intention that M. P. Shearer &
Co. would be protected or aided in any manner by the taking
of the mortgage to the bank.  It was an endeavor, pure and
simple, to secure the claim of the bank, and no attempt was
made upon the trial of this case to show to the contrary.  If
this is correct, the first question is disposed of.

The second question should not have been submitted.  This
is answered in the affirmative.  It was error to submit this
question.  It also implies that the plaintiff bank was inducing
M. P. Shearer & Co. to make a note and mortgage in this
case for the purpose of securing it and other creditors to the
exclusion of creditors not sustaining confidential relations with
M. P. Shearer & Co.  Now, as we have said, if there was no
evidence of, and no intention on the part of Shearer or the
bank, either to secure any other creditor of M. P. Shearer &
Co. than the bank by the mortgage in controversy—and this
question implies in its language, and the jury would likely to
be misled by such implication, that if it was the intention of
the bank in taking this mortgage to enable M. P. Shearer &
Co. to prefer the bank to the other creditors of M. P. Shearer
& Co. because the bank sustained a confidential relation to
M. P. Shearer & Co.—then the mortgage would be void and
fraudulent as to these defendants.  If this interrogatory is to·
be construed, together with its answer, to be what it should
have been—simply an inquiry as to whether or not the bank
was attempting by the taking of this mortgage to have itself

preferred to the other creditors of M. P. Shearer & Co., and M. P. Shearer & Co. were attempting to prefer the bank to the other creditors, and whether or not the bank was able to attain this result by reason of the confidential relations existing between it and M. P. Shearer & Co.—then it is entirely consistent with the legality of the transaction between the bank and M. P. Shearer & Co., and it, as well as the first question propounded by counsel for the defense, and its answer, construed in the light of the facts as they appear in this record and the instructions of the court, are both entirely inconsistent with the general verdict.

*Burton & Moore*, and *J. H. Mahan*, for defendants in error:

There was but one issue in this case for the jury, and that issue was, did the bank act in good faith in taking its mortgage at the time and under the circumstances under which it was taken? It is true it is not necessary under ordinary circumstances for one creditor to disclose to another the nature of his relations to their common debtor; but, in this case, fair dealing and common honesty demanded that Bonebrake and Mosher should disclose their relations to the defendants, or should have at least advised the defendants that their relations were such to their debtor that they could not with propriety act as the representative of the defendants respecting their claim. This they did not do, notwithstanding Manning presented the statement of Shearer to them, that the whole debt of the concern was not more than $3,300, and that the defendants' debt comprised one-half of this amount, which undoubtedly was honestly made by Shearer, yet neither Mosher nor Bonebrake intimated that they knew (which they did know, if their mortgage was just) that such statement was not true, but acted in a manner affirmatively to lead Manning to believe that it was true. See Bump, Fraud. Convey., pp. 223, 224, tit. "Preferences"; 8 Am. & Eng. Encyc. of Law (1st. ed.), pp. 644, 645, and note 1; *Young v. Hughes*, 32 N. J. Eq. 383.

The opinion of the court was delivered by

ALLEN, J.: In order to uphold the judgment in this case under the issues tried, it must appear either that the plaintiff's mortgage was made for the purpose of hindering, delaying or defrauding other creditors of M. P. Shearer & Co., or that the relations of the plaintiff with Lawrence, Manning & Cushing were such as to preclude it from the right to obtain security of its own claim to the exclusion of Lawrence, Manning & Cushing. The jury settled the question as to the validity of plaintiff's claim by finding that there was an actual indebtedness owing by Shearer & Co. to the bank of the amount mentioned in the mortgage. As the highest estimate placed on the value of the mortgaged stock of goods was about $5,000, it cannot be claimed that more property was covered by the mortgage than was fairly necessary to secure plaintiff's claim. Under this state of facts, although the giving of this mortgage might operate to deprive all other creditors of any opportunity to collect their debts, it still is not fraudulent. In this state a debtor has a right to pay or secure one creditor in preference and to the exclusion of others. (*Bliss v. Couch*, 46 Kas. 400; *Randall v. Shaw*, 28 id. 419; *Tootle v. Coldwell*, 30 id. 125.)

1. Chattel mortgage, when not fraudulent.

Were the relations of the bank to Lawrence, Manning & Cushing such as to preclude it from the right to secure its claim to their exclusion? It appears from the evidence that the claims of Lawrence, Manning & Cushing against Shearer & Co. had been sent to the bank for collection. On April 23, 1888, the cashier of the bank, Mosher, wrote for instructions to hand to an attorney, saying, "It is hardly in our line to assume the functions that would seem necessary in such case," referring to the taking of security for the claim. It appears that Mr. Manning was in Abilene on the 11th and 12th of April, 1888, for the purpose of securing their claim, which had all been included in notes before that time. Shearer & Co. made a statement showing their entire indebtedness to be

$3,300, which included the claim of Lawrence, Manning &
Cushing, and only about $100 or $200 to the bank.    Man-
ning testified that this statement was shown by him to Mr.
Mosher, who, in answer to the question, "What do you think
of it?" said, "I guess it is right.    Of course, I have no means
of knowing Martin's indebtedness, but, from what I know of
him, I think he would give you a correct statement, and I
should judge that statement is nearly correct."    Manning was
endeavoring at that time to obtain security for their claim,
but failed to get it.    After this, and on April 23, Mosher
wrote the letter above mentioned.    Manning returned to Ot-
tumwa, Iowa, where his firm is located, and, on the 31st of
May following, again went to Abilene to look after this claim.
He had frequent conversations with officers of the bank about
it.    He also employed an attorney, and his attorney talked
with the vice president and attorney of the bank in reference
to obtaining security.    During all these conversations, from
first to last, the existence of the bank's claim against Shearer
& Co. was never disclosed by any officer of the bank to Law-
rence, Manning & Cushing, or their attorney.    The conduct
of the officers of the bank in this respect may perhaps be in-
consistent with good morals, but we cannot declare as a mat-
ter of law that the plaintiff was bound to disclose to another
creditor the existence and amount of its claim.    To do so
might jeopardize its own interests.    In this connection, we
might say that Lawrence, Manning & Cushing are not claim-
ing that the chattel mortgage which the bank took inured to
their benefit because of the fiduciary relations existing between
them, but are attacking the validity of the mortgage itself,
and are claiming, not through the title acquired by the plain-
tiff, but adversely to it.    They were on the ground with an
attorney for the purpose of protecting their rights.    The fact
that the bank kept silent as to its own claim and
protected its own interest in preference to theirs
cannot be held to be fraud.    Nor is the claim that
they were relying on the bank to protect their interests sup-
ported by their own evidence.    While it it true that they coun-

2. Bank, protect-
ing its own
interests.

seled and advised with the officers of the bank, Mr. Manning, one of the firm, was there, and was certainly free at all times to act on his own judgment. The answer does not allege any action or declaration on the part of the plaintiff constituting an estoppel against the assertion of its claim, nor do the facts disclosed by the evidence show that the defendants parted with any property or made any contract on the faith of information received from the officers of the bank, or of their statements or conduct in relation to these matters.

There is evidence in the record tending to impeach the validity of plaintiff's claim against Shearer & Co., but the jury settled all that controversy in favor of the plaintiff, having found that the plaintiff had a valid claim for $4,444, the exact amount for which it took security. We are unable to find evidence in the record showing that it sustained any such relation to other creditors as to preclude it from protecting its own interests.

It will be observed that the verdict and judgment are in favor of all the defendants, thus not merely sustaining the attachment of Lawrence, Manning & Cushing, but also exempting the defendant Naill from all liability on account of the seizure of the stock of goods, and in effect sustaining the attachments in favor of the other parties named in the sheriff's answer, to whom it is not claimed that the plaintiff sustained any peculiar or fiduciary relations.

The judgment must by reversed, and a new trial ordered.

All the Justices concurring.