# CASES

## ARGUED AND DETERMINED

#### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS

---

### CARPENTER v. NATIONAL SHAWMUT BANK.

(Circuit Court of Appeals, First Circuit. May 1, 1911.)

#### No. 879.

1. BANKS AND BANKING (§ 161*)—DUTY OF BANK AS COLLECTING AGENT.

The ordinary duty of a bank receiving a note for collection extends no further than to make proper demand of payment, and sometimes in case of nonpayment to take such further action as necessary to secure and preserve the liability of all parties, by protest and notice as may be required by the law of its state.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 554–561; Dec. Dig. § 161.*]

2. BANKS AND BANKING (§ 161*)—BANKS AS COLLECTING AGENTS—MASSACHUSETTS STATUTE.

Rev. Laws Mass. c. 73, § 104, which provides that, "where the instrument is made payable at a bank, it is equivalent to an order to the bank to pay the same for the account of the principal debtor thereon," applies only where the instrument is made payable at a particular bank named, and the fact that a note made payable at "any bank in Boston" was sent for collection to a bank there in which the maker had a deposit when the note matured did not authorize that bank to pay the note from such deposit.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 161.*]

3. BANKS AND BANKING (§ 171*)—BANK AS COLLECTING AGENT—EXTENT OF AGENCY.

The fact that a bank had received in ordinary course notes for collection against a depositor, as to which it had done its full duty by demand and notice, did not affect its right to advise or promote a general assignment by the depositor, or any other action which it might deem to its own interest or to that of general creditors.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 171.*]

In Error to the Circuit Court of the United States for the District of Massachusetts.

Action at law by Charles H. Carpenter against the National Shawmut Bank. Judgment for defendant, and plaintiff brings error. Affirmed.

---

Samuel W. Emery, for plaintiff in error.

Thomas Hunt (Gaston, Snow & Saltonstall, on the brief), for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. It is convenient to call the plaintiff below, who is the plaintiff in error, merely the plaintiff.

In accordance with the practice allowable in Massachusetts, this suit was described in the writ as an action of "contract or tort." Whichever way it may be described, the result is the same. In the Circuit Court Judge Lowell directed a verdict for the defendant. Thereupon the plaintiff sued out this writ of error.

The declaration contained two counts, of which the first is as follows:

"Count 1. And the plaintiff says that on February 6, 1903, he was the owner and holder of two negotiable promissory notes, copies of which are hereunto annexed and marked 'A' and 'B,' respectively, and the maker and indorser were one and the same person, and on said day plaintiff procured and caused the Pittsfield National Bank of Pittsfield, in the state of New Hampshire, to forward and transmit said notes for him, the said plaintiff, to the National Shawmut Bank of Boston to be collected by said National Shawmut Bank for him, the said plaintiff, and as his agent, and on said day the said the Pittsfield National Bank, acting as agent to transmit said notes, did, as requested by the plaintiff, transmit and forward for collection to the said National Shawmut Bank the said notes, and the said National Shawmut Bank on said February 6, 1903, received said notes as the plaintiff's agent and undertook to collect the same for a reward to be paid to it by the plaintiff for collecting, and the said John E. Cassidy & Son, makers of said two notes hereinbefore mentioned, had on said February 6, 1903, and thence continually until the end of business hours on February 9, 1903, that last day being the day of the maturity of said notes, a deposit in said defendant bank of a greater sum of money than was necessary to pay the said notes belonging to the plaintiff, to wit. a deposit of $12,000, which was available to pay the said notes, but said National Shawmut Bank then and there neglected to collect said notes and after bank hours of said February 9, 1903, the said John E. Cassidy & Son, composed only of John E. Cassidy, made an assignment of all their property for the benefit of their creditors to Thomas Hunt, Esq., and to James H. Vahey, Esq., and the plaintiff's said notes could not thereafterwards be collected, and have not been collected, but are, as against the makers and indorsers, valueless to the damage of the plaintiff, and the plaintiff says this count is in contract."

It will be observed that this count alleges that the Shawmut Bank "undertook to collect" the note; but there was no such duty undertaken, unless these words are especially limited as we will show. The plaintiff reiterates in strong terms that the bank was to use reasonable efforts in the performance of its duty, which is, of course, correct; but the first thing is to ascertain the extent of its duty. None of the cases relied on by the plaintiff aids the solution of this question. The first is Bank of Commerce v. Merchants' Bank of Memphis, 91 U. S. 92, 23 L. Ed. 208, which relates simply to the question whether the collecting bank was authorized to surrender the bill of lading attached to a draft on the acceptance of the draft, without awaiting its maturity. The next is Exchange Bank v. Third National Bank, 112 U. S. 276, 5

Sup. Ct. 141, 28 L. Ed. 722, which only raised the question whether the primary bank was liable for the defaults of a third bank to which it remitted the draft in question for collection. Another case cited is Wadsworth v. Adams, 138 U. S. 380, 11 Sup. Ct. 303, 34 L. Ed. 984, which, so far as we can discover, has no relation whatever to the topic before us, and in no way concerns the duty of a collecting bank. The same may be said as to every other case relied on by the plaintiff.

[1] We apprehend no question whatever as to the extent of the duty of the Shawmut Bank. The notes in this case were payable at "any bank in Boston." Therefore the entire duty of the Shawmut Bank was to present them for payment to some bank in Boston, including its own counter, and, in case they were not paid, to require them to be properly protested either by its own officers or by a notary—ordinarily by a notary. Whether the bank, or its notary, was required to notify any party except the bank or person from whom it received the notes for collection, or, at any rate, to notify anybody except the first indorser, varies according to local rules in different states. However, there is no indorser here in the sense in which we use the word; so no question of notice, except to the bank from whom the Shawmut Bank received the notes, could arise, and that notice was given with legal promptness.

The usage and the law have always been so clearly settled that, perhaps, we need not go farther with reference to the general proposition. In Bank of Washington v. Triplett, 1 Pet. 25, 30, 7 L. Ed. 37, Chief Justice Marshall spoke of the custom of transmitting notes for collection, as in this case, as a common usage of great public convenience, "the effect of which is well understood." It is in the light of that suitable observation that we discuss this question so far as it needs discussion. We are not called on to cite particular decisions in which this precise question was involved, because the duty of the Shawmut Bank was so well defined, as said by Chief Justice Marshall, that observations of various judges in the general course of their opinions are sufficient. In Phipps v. Milbury Bank, 8 Metc. (Mass.) 79, 84, where the defendant bank was a collecting bank like the Shawmut Bank in the case before us, the opinion in behalf of the court says:

"Acting as such agents, they were bound to make a legal demand of payment of the promissors, and, upon nonpayment, to give due notice of the dishonor to the Suffolk Bank, the holders, to enable them to give notice to such parties on the note as they intended to look to for payment. This I consider to be all their duty; and, to bind them to give notice to all the indorsers, there must be some special agreement between them."

This not only states in a general way the entire duty of the collecting bank, but, in observing that that bank was not required to notify all the indorsers, the conclusion positively negatives the proposition that the collecting bank had any general duty to collect the note. Likewise, in Ward v. Smith, 7 Wall. 447, 451, 19 L. Ed. 207, the opinion in behalf of the court observes in the same way that, when the instrument is lodged with the bank for collection, "the bank becomes the agent of the payee or obligee to receive payment," and "the agency extends no further." In this case there was no occasion for a demand and protest, and therefore no occasion to speak with reference to giv-

ing notice to any indorser; but this expression negatives any suggestion that there was any general duty to collect the instrument involved, of the kind claimed by the plaintiff here.

Cheney v. Libby, 134 U. S. 68, 82, 10 Sup. Ct. 498, 33 L. Ed. 818, merely reiterates the language of Ward v. Smith; but Morse on Banking (4th Ed. 1903), at section 219, describes the duty of a collecting agent of negotiable paper, like the bank here, "so to. act as to secure and preserve the liability thereon of all the parties prior to his principal." This is going farther than required by the law of the state where these notes were payable, where the most that is required is that the first indorser should be notified, leaving him or the holder to notify the other indorsers; but it succinctly describes the duty of the collecting agent to be to secure and preserve the liability of the parties to the paper without any suggestion of any further obligation. Therefore we do not hesitate to say that, at common law, the Shawmut Bank had no duty of the kind described in the count which we have quoted, and that its only duty was to present, as we have said, the note for payment at the proper time at the counter of some bank in Boston, including itself, and to notify its correspondent bank of any default. All this was done. Daniel on Negotiable Instruments (5th Ed. 1903) beginning at paragraph 327, discusses this topic in its various aspects at length in entire harmony with the conclusion we have reached.

[2] The plaintiff, however, relies on the 104th section of chapter 73 of the Revised Laws of Massachusetts, reading as follows:

"Sec. 104. Where the instrument is made payable at a bank it is equivalent to an order to the bank to pay the same for the account of the principal debtor thereon."

In some localities it is quite customary for each business man to make his notes payable at the bank where he ordinarily keeps a deposit to his credit. In every such case, however, he particularly specifies the bank. The usage is to regard this specification as in all respects the same as a check providing for a note to be paid, and the same is ordinarily honored precisely as such a check would be, and the note paid and charged up to the account of the promisor. It was said at our bar that there was no general rule of this nature in Massachusetts, but it is of no particular consequence whether this is so or not. The practice, where it exists, may be either a general usage or a matter of law, or it may be simply a general arrangement made between each depositor and his bank. We say it is not important, because it is an affair in which no one except the bank and the promisor on the note is concerned, the holder of a note being ordinarily precisely like the holder of a check, without remedy against a bank for nonpayment of either the note or the check. Chalmers' Bills of Exchange (7th Ed.) 198; Hill v. Royds (1869) L. R. 8 Eq. 290; Bank of England Case, [1891] App. Cas. 107, 157. At any rate, the practice or usage, or whatever it might be, required that the note should be made payable at the particular bank at which the promisor dealt, in the same manner in which an ordinary check would be expressly addressed, the note answering the purpose of a check. Therefore the presumption is that

the Massachusetts statute which we have cited was merely intended to give effect to the custom or usage or law, or whatever it is, wherever it prevails; and therefore it cannot be presumed to have intended to apply to any bank, except to a bank particularly named in the note. Moreover, notwithstanding all the ingenuity of the plaintiff in his attempts to give the statute we have cited a different interpretation, no different interpretation can be given it. The statutory provision uses first the words "a bank," but subsequently contains "the bank." Nowhere does it contain the words "any bank," which the plaintiff insists on inserting into it. The words "a bank" are consistent with the designation of a particular bank, and the words "the bank" necessarily involve that particularity.

If the note had been particularly addressed to the Shawmut Bank, and it had had the money on deposit belonging to the promisor, and would thus have been particularly requested by the promisor to pay the notes, its plain duty on their presentation for payment would have been violated if it had refused to pay when it had the funds to do so; yet, in view of the fact that the notes were not payable at its counter, it was neither required to pay, nor had it any authority to do so. Under the circumstances, to have paid them from the promisor's deposit would have been beyond its authority, and a violation of its duty to him, unless there had been some other communication from the promisor to the Shawmut Bank which the record fails to show. Therefore it follows that all the allegations of the count which we have quoted referring to the deposit to the credit of the promisor at the Shawmut Bank are wholly immaterial, and need no further observations from us.

[3] The second count charges the defendant bank with aiding to bring about a general assignment for the benefit of creditors by the promisor in the notes, which assignment drew after it the balance to the credit of the promisor, except so far as the same was offset by the defendant bank against certain notes of the promisor held by it, not then due. The bank is charged in this count with a lack of good faith, and especially with failing to inform the holder of the notes of the actual situation with reference to the deposit in question. All this, however, was entirely immaterial, because, as we have shown, the bank had no authority to apply the deposit towards these notes; and the record fails to show that the holder of the notes could have availed himself in any way of the deposit before the assignment was effected. All this disregards the fact that the bank had no duty towards the holder of the notes, except to present them for payment, and give notice, as we have said. When it had done that, it was entirely relieved from all further obligation. It would be unreasonable to hold that, because a bank happened to have certain notes for collection as to which it had done its full duty, as we have shown, it was embarrassed thereby with reference to protecting itself, or with reference to promoting anything which might be regarded as for its own benefit or for the general benefit of creditors. All the suggestions insisted upon by the plaintiff, to the effect that an agent cannot assume an adverse interest as against his principal, overlook the fact that the

nature and extent of the agency are to be considered in this connection, and that with such consideration the suggestion is impotent.

After the Shawmut Bank had made its demand and given its notice, it had no further duties towards the plaintiff by reason of the relations which we have stated. From that time on the plaintiff had no right to consider the conduct of the bank with reference to any of the matters complained of by him. For that simple reason, it is not necessary to dwell upon these propositions further; but that the offsets made by the bank were legitimate was settled with reference to the statutes in bankruptcy by New York County Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380, and Lowell v. International Trust Co., a decision of this court of December 17, 1907, 158 Fed. 781, 86 C. C. A. 137, and with reference to the state laws by Demmon v. Boylston Bank, 5 Cush. (Mass.) 194. It is also immaterial that the Shawmut Bank was active in preventing the plaintiff from attaching the funds in the Shawmut Bank, if it was thus active, as was settled by this court in Graham v. Peale, decided on October 5, 1909, reported in 173 Fed. 9, 14, 97 C. C. A. 311, where Bradley v. Fuller, 118 Mass. 239, was fully and broadly approved.

We have so far treated the provision of the Revised Laws of Massachusetts which we have cited as applying to this case so far as any question between local legislation and the federal courts is concerned. Of course, it is settled generally that local legislation touching the rights of various parties to bills of exchange and promissory notes of a broad commercial character—that is, carrying interstate or international relations—is not binding on the federal courts; but this rule is not applied to ordinary questions in regard to demand and payment and giving notice of the result thereof, or to anything else touching the immediate question of collecting, because all such matters are necessarily of local character. So we have no occasion to consider the applicability of the statute under the present circumstances on account of any federal question.

The judgment of the Circuit Court is affirmed, and the appellee recovers its costs of appeal.