[Civ. No. 4558.   Second Appellate District, Division One.—January 20, 1927.]

ALIE JACKSON, as Executrix, etc., Appellant, v. THE FIRST NATIONAL BANK OF EL CENTRO (a Corporation), Respondent.

[1] BANKS AND BANKING — ACCEPTANCE OF OBLIGATIONS FOR COLLECTION—RIGHT TO PROTECT OWN INTERESTS.—In the ordinary course of business and without special agreement to the contrary, where a bank receives obligations for collection, it is not forbidden or prevented from taking such action as may be desirable or advisable to protect its own interests as against the persons from whom such collections are proposed to be made, even though by so doing it may work an injury or damage to the person entrusting the bank with such collections.

[2] ID.—AGENCY—COLLECTION OF RENTALS—CROP MORTGAGE TO SECURE INDEBTEDNESS—DUTY TO PRINCIPAL.—In this action against a bank to recover a sum of money on the theory that the bank as agent of plaintiff took advantage of its position and used plaintiff's prop-

erty for its own benefit, and that plaintiff was thereby damaged in the sum stated, the evidence disclosed that there was no express duty resting upon the bank to collect the rent from plaintiff's property, other than to receive the money from the tenants in the event that they wished to pay, and to notify plaintiff of the fact of payment, or if the rents were not paid to notify the tenants that the rent was due and at the same time notify plaintiff when the rents were not paid; and, under such circumstances, the act of the bank in taking a mortgage on the crops growing on plaintiff's property, as security for indebtedness owing from one of the tenants to the bank, was not a violation of the bank's duty to plaintiff, even though such act resulted in the bank gaining a priority over plaintiff.

(1) 7 **C. J.**, p. 609, n. 8.    (2) 7 **C. J.**, p. 609, n. 9.

APPEAL from a judgment of the Superior Court of Imperial County. M. W. Conkling, Judge. Affirmed.

The facts are stated in the opinion of the court.

Chas. L. Childers for Appellant.

Hickcox, Crenshaw & Trude for Respondent.

HOUSER, J.—This is an appeal from a judgment in favor of the defendant rendered by a jury in accordance with the instructions of the trial judge. As is stated in appellant's brief, the action "was brought by the plaintiff to recover from the bank, defendant, the sum of $1500 on the theory that the bank as agent of the plaintiff, took advantage of its position as agent and used the plaintiff's property for its own benefit, and the plaintiff was thereby damaged in that amount."

It appears that plaintiff was the owner of some land which she had leased to some Japanese for a cash rental. Thereafter plaintiff desired to leave the state of California to be gone for several months, and during such absence she wished to have her rents collected by the defendant. With reference to her negotiations and conversation with one of the officers of the defendant bank, she testified, in part:

"I told him I was going back East; that I had come out to renew some of my leases and to look after my business interests out here; that I had renewed this lease with these

two particular Japanese, and how much I was renting the land for per acre, when the payments were due, and that I took the Japanese into the bank; also that any payments were to be paid there to the bank while I was away. My leases I was leaving in the bank and I was also going to make a memorandum of my rents, when they were due, each month, and they were to be paid to the bank, and I wanted the bank to notify me directly, I gave them my address, when these rents were paid, and also give the tenants a deposit slip so that they could mail me this duplicate as to when the rents were paid, and in case the rents were not paid I was leaving this memorandum to put on file along with my leases to notify the tenants that their rent was due and at the same time notify me when the rents weren't paid.''

On cross-examination plaintiff stated that her tenants were present when she had the conversation with the officer of the defendant bank. She further testified:

''Q. And did you take them to Mr. Holt and tell Mr. Holt *these men were to come in to pay the money?* A. Yes, sir, I told him I had renewed the lease for these boys and I considered them *good.* I said I had been dealing with them six or seven years and I had been renting land to them and I was renewing my lease and what the rents amounted to and when the rents were due and tried to make it plain because I was going away, and just how we stood. Q. At the time you considered the tenants were *good and you would have no trouble about them paying the rents to the bank?* A. I did.''

It is further disclosed by the evidence that the rent on plaintiff's property became due on October 10th; that some time in the month of August the tenants asked plaintiff for an extension of time within which to make the October payment, and that shortly thereafter plaintiff wrote a letter to defendant (to quote her language) and ''told them that I had received a letter asking for time and I said I understand that they are not living on my place, but on Mr. McGrew's place, make an investigation and find out and let me know how they stand, how they are getting along, what kind of a crop they have, etc.''; also that the payment of $1,500 was due on October 10th.

It further appears by the evidence that antedating by several months the arrangement between the parties, the de-

fendant bank had taken a chattel mortgage on certain personal property belonging to the tenants of plaintiff as security for an indebtedness then owing by such tenants to the bank; that on September 20th, which was several days after the date of plaintiff's letter to the defendant, the bank took a new mortgage from the tenants and included therein the crop grown by them on plaintiff's property as further security for the indebtedness then owing to the bank, as well as for future advances to be made by it to the tenants in harvesting the crop, etc.

On or about November 20th plaintiff returned to California and, on learning that the rent of her land had not been paid, and after having discovered that the defendant had taken a new mortgage from the tenants, which included the crop grown on plaintiff's land, she secured from her tenants a second or junior mortgage on the said crops, etc., as security for the payment of the rent then owing to her.

Payment not having been made, the defendant bank foreclosed its mortgage, but was unable to fully satisfy its claim from the entire security held by it; and the rent not having been paid, plaintiff brought this action against the defendant on the theory, as hereinbefore set forth, that "the bank, as agent of the plaintiff, took advantage of its position as agent and used plaintiff's property for its own benefit."

No authority has been cited by appellant which would indicate a rule that would prevent a bank situated as to facts as was the defendant herein from taking security for a debt owing to it from a person against whom the bank also holds a claim for collection. It may readily be understood how the enforcement of a principle such as that for which appellant contends might work disastrous results to the collection branch of the banking industry, although this would not necessarily be a defense to an action of this character. Its effect would be that no bank could safely undertake the collection of any bills, or notes, or negotiable instruments of any description against any person who was indebted to the bank, if at the same time or at any time before making such collection, the officers of the bank contemplated the necessity of requiring either original or additional security from such debtor. [1] On the other hand, authorities are not lacking which attest the rule that in the ordinary course of business and without special agreement to the con-

trary, where a bank receives obligations for collection, it is not forbidden or prevented from taking such action as may be desirable or advisable to protect its own interests as against the persons from whom such collections are proposed to be made, even though by so doing it may work an injury or damage to the person entrusting the bank with such collections.

In the case of *Freeman* v. *Citizens' National Bank*, 78 Iowa, 150 [4 L. R. A. 422, 42 N. W. 632], it appears that some drafts were drawn by the plaintiff on a man by the name of Price and that such drafts were deposited with the defendant bank for collection—following which the defendant brought an action against Price on a prior indebtedness owed by him to the bank and in such action attached property belonging to Price. In a subsequent action brought by the plaintiff against the defendant bank practically the same point was urged as is here presented by appellant. The supreme court of Iowa said:

"It is argued that defendant had no right to enforce its claim against Price, so as to gain priority over plaintiffs; and that, inasmuch as plaintiffs, had they known defendant held a claim against Price, would not have sent to it the drafts, it in effect practiced a fraud upon plaintiffs; and it should not be permitted to take advantage of its priority thus gained. But defendant undertook no other duty than the collection of the drafts, and to obey instructions pertaining thereto. It was not the guarantor for Price. It did not undertake to report as to his responsibility or solvency. In short, its duty was that of a bank receiving paper for collection. It cannot be admitted, as is contended by counsel, that the indebtedness of Price to defendant forbade it to enforce its claim, so as to gain priority over plaintiffs. Surely a bank may discount paper, and retain the right to hold collections against the maker of the paper without surrendering its rights of priority gained by diligence. As a matter of fact, many of the business men of the country, against whom collections are sent to banks, are customers of such banks, depositing money and discounting their own paper as the necessities of their business demand. It has never been supposed that banks must concede priority to paper sent them for collection as to their own claims against

the maker of such paper under such a state of facts as we have in this case.''

In the case of *United States National Bank of Omaha* v. *Westervelt,* 55 Neb. 424 [75 N. W. 857], where the same principle was involved, the court directed attention to an earlier case (*Dern* v. *Kellogg,* 54 Neb. 560 [74 N. W. 844]), decided by it, in which it was said: ''We by no means intend to hold that a bank holding paper for collection merely may not, as a general rule, obtain a preference for a debt owing to itself.'' And, among other things, the court added the following: ''It would prevent a bank's undertaking collections. So long as the collecting agent assumes no other duty than the due presentment of paper, and so long as it discharges that duty, and is guilty of no misrepresentation or fraudulent concealment, it is not forbidden to in good faith obtain security for a claim it holds in its own behalf against the debtor'' (citing *Freeman* v. *Bank,* 78 Iowa, 150 [4 L. R. A. 422, 42 N. W. 632]; *Bank* v. *Naill,* 52 Kan. 211 [34 Pac. 797]).

In a third case in which a bank was charged with bad faith in the matter of an alleged agency which in many respects was similar to the facts in the instant case, a conclusion in principle like that indicated in the last preceding authority was reached by the United States circuit court of appeals. (*Carpenter* v. *National Bank of Shawmut,* 187 Fed. 1.)

[2] From the evidence in the instant case it is apparent that there was no express duty resting on the defendant to make the collections. The arrangement between the plaintiff and defendant was purely one of convenience and accommodation to the plaintiff, without any compensation to be paid to the bank therefor. With reference to the collections, the bank had no duty to perform other than to receive the money from the tenants in the event that they wished to pay it. If the rents were paid, the bank was to notify plaintiff of such fact; if not paid, the bank was ''to notify the tenants that their rent was due, and at the same time notify me (plaintiff) when the rents weren't paid.'' The action herein does not count on defendant's negligence, if any, in failing either in its duty to notify the tenants that the rent was due, or to notify plaintiff that the rents were unpaid; or, in fact, to take any other positive or affirma-

tive action in plaintiff's behalf. The action as brought rests entirely upon a violation of an alleged duty of an agent to protect the rights of his principal at all hazards, going even to the extent of not only requiring the agent to jeopardize his own interests, but, in case of necessity, to incur their total loss.

From the authorities cited herein it would seem clear that, in the circumstances of the instant case, the verdict in favor of the defendant was in accordance with well-established principles of law. The judgment rendered in consequence of such a verdict cannot be disturbed.

It is ordered that the judgment be and it is affirmed.

Conrey, P. J., and York, J., concurred.