167 So.2d 681 (1964)
Raymond J. DAUZAT, Plaintiff and Appellant,
v.
SIMMESPORT STATE BANK et al., Defendant and Appellee.
No. 1190.
Court of Appeal of Louisiana, Third Circuit.
September 15, 1964.
Rehearing Denied October 14, 1964.
*682 Roy & Roy, Chris J. Roy, Marksville, for plaintiff-appellant.
David I. Couvillion, Ben C. Bennett, Jr., Marksville, for defendant-appellee.
Before TATE, FRUGE and HOOD, JJ.
HOOD, Judge.
This is an action instituted by Raymond J. Dauzat against Simmesport State Bank and Ernest R. Gremillion to recover judgment for the sum of $3,000.00. After trial on the merits, judgment was rendered in favor of plaintiff and against one of the defendants, Gremillion, for the amount claimed, but in favor of the remaining defendant, Simmesport State Bank, rejecting all of plaintiff's demands as against that defendant. Plaintiff has appealed, contending that the trial court erred in rejecting his demands against the Simmesport Bank.
After the appeal had been perfected, the defendant bank filed in this Court an exception of no right and no cause of action based on allegations that in the original petition plaintiff sought damages solely in tort against the bank, whereas on this appeal he seeks to recover against the defendant ex contractu.
During the year 1961, Gremillion entered into a contract with Atlas Construction Company to do bulldozing work for that company in Franklin, Richland and Madison Parishes, Louisiana. While performing this contract, and in order to finance his operations, Gremillion from time to time obtained loans from the Simmesport State Bank. As security for these loans, the bank caused Gremillion to execute a written act of assignment, formally assigning to the bank all payments or benefits which Gremillion was entitled to receive from Atlas Construction Company under the terms of the above mentioned contract.
In August, 1961, Gremillion engaged plaintiff, a heavy equipment operator, to assist him in completing some of the work which he had undertaken to perform for Atlas. Dauzat agreed to furnish some heavy dirt-moving equipment, with operators, to assist in performing this work, and in consideration therefor he was to be paid by Gremillion at the rate of $16.00 per hour.
Dauzat performed services for Gremillion pursuant to this agreement between the dates of August 1 and October 12, 1961. Shortly after the last date on which these services were rendered, Dauzat received a check for $1,500.00 from Gremillion, drawn on the defendant bank, representing a partial payment for the services which Dauzat had rendered. This check was promptly presented for payment to the drawee, the Simmesport Bank, but payment was refused *683 by the bank, Dauzat being informed by officials of the bank at that time that Gremillion had no funds in his account with which to pay the check.
Gremillion and Dauzat disagreed as to the amount which the latter should be paid for the services which he had performed, but on November 14, 1961, the parties settled their differences, and Dauzat agreed to accept $3,000.00 from Gremillion as compensation for all of the services which he had rendered.
Pursuant to this agreement, Gremillion executed and delivered to Dauzat a check for $3,000.00 dated November 14, 1961, and drawn on the defendant bank. Dauzat presented this check to the bank for payment on that date, and payment was refused because Gremillion had no funds in his account. At Dauzat's request, however, the bank agreed to hold the $3,000.00 check "for collection," with the understanding that it would be paid when sufficient funds would be available in Gremillion's account for that purpose.
The evidence is conflicting as to whether Dauzat was informed by bank officials at the time the check was left for collection that Gremillion had previously assigned to the bank all of the benefits which he expected to receive from Atlas Construction Company, or that Gremillion was indebted to the bank. After considering the evidence, the trial court concluded that Dauzat was informed of the assignment at the time the check was left with the bank for collection, and that with this information Dauzat could infer and did infer that the bank was a creditor of Gremillion at that time.
Dauzat inquired about the check from time to time while it was being held by the bank for collection, but he was informed on each such occasion that funds sufficient to pay the check had not been credited to Gremillion's account. The check has never been paid. It remained at the bank for a period of about one year and then it was withdrawn by Dauzat shortly before this suit was instituted.
On November 14, 1961, when Dauzat first presented the $3,000.00 check for payment to the bank, Gremillion's account was overdrawn $3,063.28, and Gremillion was indebted to the bank for a sum in excess of $5,000.00. Except for the indebtedness created by the overdraft, Gremillion's debts to the bank were evidenced by promissory notes which he had executed payable to the bank. On November 20, 1961, the bank received a payment of $5,060.25 from Atlas Construction Company, pursuant to the above-mentioned assignment of benefits. Out of this payment the bank credited Gremillion's account with exactly the sum which was needed to satisfy the overdraft, and the balance of the payment was applied as a credit to one of Gremillion's past-due notes to the bank. In March, 1962, the bank received from Atlas, pursuant to the assignment of benefits, another payment in the sum of $2,471.64. The bank applied all of this sum as a credit on Gremillion's past due notes held by the bank. Except for the deposit made to cover the overdraft, no part of any of the funds paid to the bank by Atlas under the assignment was ever credited to or deposited in Gremillion's checking account. No other funds were received by the bank from Atlas, and at the time of the trial of this suit Gremillion was indebted to the bank for the sum of approximately $50,000.00. Gremillion admittedly is insolvent.
In his petition plaintiff alleges that because of his detrimental reliance upon representations made by the bank that the check would be honored, he did not file a written notice of his claim with Atlas Construction Company within the ninety day period of time prescribed by the "Miller Act" (40 U.S.C.A. § 270a et seq.), and thus he failed to obtain a preference to which he otherwise would have been entitled in the payment of the debt that Gremillion owed him. For that reason he contended in the trial court, and he contends here, that he is entitled to recover from the defendant bank the damages which he sustained because of his failure to timely file his claim under the *684 Miller Act. On this appeal, plaintiff argues as an additional ground for recovery that the bank is liable to him because it "accepted" the check when it was presented for payment, and thus the bank became obligated to pay the check under the Negotiable Instruments Law of this State (LSA-R.S. 7:1 et seq.). Plaintiff also argues, in the alternative, that the bank in accepting the check for collection became the agent of the payee, Dauzat, and that the bank is liable because it breached certain duties which it, as agent, owed to the principal.
LSA-R.S. 7:132, relating to the acceptance of a negotiable instrument by the drawee, provides:
"The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promises by any other means than the payment of money."
In the instant suit, when the check was presented to the bank for payment, Dauzat was informed that the drawer had no funds in his checking account with which the check could be paid. At Dauzat's request, however, the bank agreed to hold the check for collection, and Dauzat was given a deposit slip with the words "For collection only" written in pencil on it. In our opinion this action by the bank was not a "signification by the drawee of his assent to the order of the drawer," as is required for there to be in an "acceptance" under LSA-R.S. 7:132. Instead, it constituted an agreement on the part of the bank to endeavor to collect the check, to duly present it for payment and to pay the check if and when sufficient funds were deposited in that bank in the checking account of the drawer. The action of the bank, therefore, did not constitute an "acceptance" of the bill, within the meaning of LSA-R.S. 7:132, but rather, it was an expression that the drawee would perform his promises by means other than the payment of money.
We think the applicable law is correctly stated in 10 Am.Jur.2d, Banks, Section 403, as follows:
"The courts are practically unanimous in holding that the title to a check or other commercial paper deposited for the special purpose of collection does not pass to the bank. Thus, where a check or other commercial paper deposited with the bank is endorsed for collection, or where there is a definite understanding that such is the purpose of the deposit of the paper at the time of the deposit, the title to the paper remains in the depositor; in such case the bank acts merely as an agent of the depositor for the purpose of collection."
This rule was recognized by our Supreme Court in the case of In re Liquidation of Canal Bank & Trust Co., 181 La. 856, 160 So. 609, 99 A.L.R. 473, although under the facts of that particular case it was determined that the drafts there involved had been accepted and that a debtor-creditor relationship had been established between the bank and the payee.
It is stated in 9 C.J.S. Banks and Banking § 218, pages 466, 467, that:
"Where a bank receives commercial paper for collection merely, the relationship which arises between the depositor and the bank is that of principal and agent. The agency thus created continues in the absence of a revocation or * * * the insolvency of the collecting or forwarding bank, until the transaction is completed, and the relationship of debtor and creditor does not arise prior to the collection of the instruments deposited."
In this case we conclude that the title to the check remained vested in Dauzat, and that the defendant bank, in accepting the check "for collection only," did not become the debtor of the payee. See LSA-R.S. 7:189. In our opinion, a principal-agency relationship was established when the bank accepted the check for collection, the bank becoming the agent of Dauzat for the collection *685 of the check. See 9 C.J.S. Banks and Banking § 218.
In support of his argument that the check had been accepted by the bank, plaintiff relies on the cases of Kane v. Robertson, 26 La.Ann. 335; First National Bank of Winnfield v. Citizen's Bank, 163 La. 919, 113 So. 147, and, Westberg v. Chicago Lumber and Coal Company, 117 Wis. 589, 94 N.W. 572. In the first two cited cases it was determined that there had been either an express or an implied acceptance of the drafts involved, while the last mentioned case was remanded because the evidence was not sufficient to establish whether there had been an acceptance. We have reviewed each of these cases carefully, but the facts in each differ materially from the facts in the instant suit, and we fail to find in those decisions support for the position taken by plaintiff here.
Plaintiff argues alternatively that the bank, as agent for the payee of the check, breached its duty as an agent by failing to inform Dauzat of the fact that the bank was also a creditor of Gremillion, and thus that the agent bank had an interest in the subject matter of the agency which was opposed to that of the principal. Plaintiff also argues that the bank breached its duty to Dauzat in failing to pay the $3,000.00 check out of the monies received from Atlas in November, 1961, and in March, 1962, before using any part of said funds for the satisfaction of overdrafts in Gremillion's account or for the payment of debts due by Gremillion to the bank.
It is the duty of an agent to fully inform the principal of all facts relating to the subject matter of the agency which come to the knowledge of the agent and which it is material for the principal to know for the protection of his interests. Robinson v. Thomson, 212 La. 186, 31 So.2d 734. The utmost good faith is exacted of an agent in all of his dealings with his principal, and an agent cannot lawfully serve or acquire any private interest of his own which is opposed to the interests of the principal in the subject matter of the agency. Neal v. Daniels, 217 La. 679, 47 So.2d 44.
In this suit we have concluded that Dauzat was informed by the defendant bank at the time the check was left with the bank for collection that Gremillion had assigned to the bank the benefits which he expected to receive from Atlas Construction Company under the contract which he had entered into with that company, and that from this information Dauzat inferred and thus knew that the bank was a creditor of Gremillion. Under these facts, we find that there was no breach of duty on the part of the bank in failing to inform Dauzat of facts relating to the subject matter of the agency which it was material for Dauzat to know for the protection of his interests.
The question of whether the bank was under a duty to pay the $3,000.00 check out of the funds which it received from Atlas, before applying any part of those funds toward the satisfaction of overdrafts or debts due by Gremillion to the bank, is presented partly because of a disagreement between the parties as to the facts. Plaintiff testified that at the time he left the check with the bank for collection, he was told by officials at the bank that the check would be paid "when the estimates would come in." It was his understanding, he states, that the $3,000.00 check was to be paid out of the first payments received by the bank from Atlas under the assignment which the bank held. Officials of the bank testified that at the time the check was left with them for collection Dauzat was informed that the check would be paid only "if there were any funds available in Mr. Gremillion's account" for that purpose. The defendant bank contends that from and after the time the check was left with it for collection there have been no funds available in Gremillion's account with which to pay the check.
The trial judge, apparently agreeing with defendant's version of the facts, concluded that "the bank agreed to hold this $3,000.00 check given to Dauzat for collection, *686 and when funds would be available in Gremillion's account, from this assignment of benefits, the check would be paid." We think the evidence supports that conclusion. We find, therefore, that the defendant bank did not agree or promise to pay to Dauzat the amount of this check out of the first sums of money paid to the bank by Atlas in preference to the payment of overdrafts and debts owed by Gremillion to the bank.
The bank, as collecting agent for the payee on the note, owed a duty to Dauzat to present the check for acceptance and payment and to exercise due diligence in seeking payment of it. The bank also, as the drawee, owed a duty to the maker, Gremillion, to pay the check if the latter had sufficient funds deposited to his checking account to cover it. First Nat. Bank of Murfreesboro v. First Nat. Bank of Nashville, 127 Tenn. 205, 154 S.W. 965; Olds Motor Works v. First State Savings Bank of Morenci, 258 Mich. 269, 241 N.W. 813; 9 C.J.S. Banks and Banking § 235.
Since the bank was under a duty to pay the check if sufficient funds became available in Gremillion's account for that purpose, the question is presented of whether the amounts paid to the bank by Atlas in November, 1961, and in March, 1962, should have been deposited in Gremillion's account, and thus whether those funds should have become "available" for payment of the check.
At the time Gremillion assigned to the bank the benefits which he expected to receive under his contract with Atlas, he was indebted to the bank and the bank obtained the assignment as security for the loans which it had made to Gremillion.
In Chapter 12 of Title VII of the LSA-Civil Code, which chapter is entitled, "Of the Assignment or Transfer of Credits and other Incorporeal Rights," are the following pertinent articles:
"Art. 2642. In the transfer of credits, rights or claims to a third person, the delivery takes place between the transferrer and the transferree by the giving of the title."
"Art. 2645. The sale or transfer of a credit includes every thing which is an accessory to the same; as suretyship, privileges and mortgages."
Applying the above quoted articles of our Civil Code to the facts presented here, we think the assignment executed by Gremillion to the bank had the effect of transferring to the bank the ownership of the funds paid to it by Atlas, at least until Gremillion's indebtedness to the bank had been fully satisfied. The evidence shows that the bank did not receive funds from Atlas in excess of the overdrafts and notes owed to the bank by Gremillion. Since the bank became the owner of the funds paid to it by Atlas in November, 1961, and in March, 1962, it was under no duty, either as collecting agent for Dauzat or as drawee of the check, to deposit these funds to Gremillion's checking account or to pay the check with those funds in preference to the payment of debts which Gremillion owed the bank.
No authority has been pointed out to us, and we know of none, which prohibits a banking institution from obtaining an assignment of benefits as security for a loan which it has made, and from subsequently enforcing this security and applying the proceeds toward the payment of that loan, even though the bank may be the collecting agent for another creditor of the borrower.
In Jackson v. First National Bank of El Centro, 80 Cal.App. 733, 252 P. 743, the court appropriately observed:
"No authority has been cited by appellant which would indicate a rule that would prevent a bank situated as to facts as was the defendant herein from taking security for a debt owing to it from a person against whom the bank also holds a claim for collection. It may readily be understood how the enforcement of a principle such as that for which appellant contends might work disastrous results to the collection *687 branch of the banking industry, although this would not necessarily be a defense to an action of this character. Its effect would be that no bank could safely undertake the collection of any bills, or notes, or negotiable instruments of any description against any person who was indebted to the bank, if at the same time, or at any time before making such collection, the officers of the bank contemplated the necessity of requiring either original or additional security from such debtor. On the other hand, authorities are not lacking which attest the rule that in the ordinary course of business and without special agreement to the contrary, where a bank receives obligations for collection, it is not forbidden or prevented from taking such action as may be desirable or advisable to protect its own interests as against the persons from whom such collections are proposed to be made, even though by so doing it may work an injury or damage to the person intrusting the bank with such collections."
Other authorities to the same effect are Carpenter v. National Shawmut Bank, 1 Cir., 187 F. 1, and United States Nat. Bank of Omaha v. Westervelt, 55 Neb. 424, 75 N.W. 857.
In the instant suit we have concluded that there was neither an express nor an implied agreement between Dauzat and the bank that the proceeds received by the bank from Atlas under the assignment would be applied to the payment of the $3,000.00 check in preference to the bank's claims against Gremillion. In the absence of such an agreement, the bank was free to apply the funds received from Atlas as it saw fit, since the bank was the owner of these funds and they were not paid to the bank to be deposited in Gremillion's checking account.
While it is well settled in this State that a bank, without the express consent of the depositor, cannot apply funds on deposit in his account to the payment of a debt owed to the bank by the depositor (see LSA-C.C. Art. 2210; and Watkins v. Bank of Morgan City & Trust Co., La.App. 1 Cir., 162 So. 262), that rule is not applicable to the facts involved here because in this instance the bank did not receive funds to be deposited in Gremillion's account. There were no funds in that account, therefore, which the bank could have used in satisfying debts which were owed to it by Gremillion.
Under the facts presented here, we conclude that there has been no breach of duty on the part of the bank, as the agent of Dauzat for the collection of this check, and thus the bank is not liable to plaintiff because of any alleged breach of duty.
Finally, plaintiff contends that he is entitled to recover the amount of his loss from defendant bank because he, relying upon the bank's representation that the check would be paid, failed to file a written notice of his claim with Atlas within the ninety day period prescribed by the "Miller Act". He argues that his failure to timely file this notice caused him to lose a preference in the payment of the amount due on the check.
We, like the trial judge, find no merit to that argument because we have concluded that the bank did not represent to plaintiff that the check would be satisfied out of the first payments made to the bank by Atlas.
Since we have concluded that plaintiff is not entitled to recover from the defendant bank, either ex contractu or ex dilicti, it is unnecessary for us to consider the exception of no right and no cause of action which the defendant bank has filed in this Court.
For the reasons herein set out, the judgment appealed from is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.