386 So.2d 96 (1980)
AMERICAN BANK AND TRUST COMPANY OF BATON ROUGE, Plaintiff-Appellee,
v.
LOUISIANA SAVINGS ASSOCIATION, Defendant-Appellant.
No. 7444.
Court of Appeal of Louisiana, Third Circuit.
May 21, 1980.
Rehearing Denied July 16, 1980.
*97 Anderson, Leithead, Scott, Boudreau & Savoy, Everett R. Scott, Jr., Lake Charles, for defendant-appellant.
McCollister, McCleary, Fazzio, Mixon, Holliday & Jones, Michael S. Wolf, Baton Rouge, for plaintiff-appellee.
Camp, Carmouche, Palmer, Barsh & Hunter, Wade N. Kelly, Lake Charles, for garnishee-appellee.
Before CULPEPPER, DOMENGEAUX and STOKER, JJ.
STOKER, Judge.
This is an action for declaratory judgment. The petitioner is American Bank and Trust Company of Baton Rouge. The defendant is Louisiana Savings Association. Both parties claim certain funds realized from the sale of certain assets by one Ludwig S. Bandaries, Jr. The assets in question *98 consist of an alleged interest in a partnership. The purpose of the declaratory action suit is to determine which party is entitled to the funds. The determination of that question is the issue in the case.
Recognizing their conflicting claims, the parties agreed to place the disputed funds in escrow in the Calcasieu Marine National Bank, Lake Charles, Louisiana, pending a decision of court to decide who should be awarded the funds. American Bank and Trust Company of Baton Rouge (American Bank) bases its claim on a creditor relationship with Ludwig S. Bandaries, Jr., arising out of a loan by American Bank to Bandaries. American Bank asserts that its claim primes the claim of Louisiana Savings Association (Louisiana Savings) by virtue of a security agreement by which Bandaries gave a written hypothecation of an interest in an apartment complex in Lafayette, Louisiana. This hypothecation is sometimes referred to in the record as an "assignment". The nature and legal effect of the "assignment" is one of the principal matters of argument in this law suit. The "assignment" was executed by Bandaries in favor of the bank on February 28, 1975, and was recorded in Lafayette Parish on October 21, 1976.
On December 28, 1976, Louisiana Savings recorded in Lafayette Parish a judgment rendered against Bandaries by the Tenth Judicial District Court for the Parish of Natchitoches, Louisiana. It is the judicial mortgage created by this recordation on which Louisiana Savings rests its claim. After entering the escrow agreement, and despite the agreement, Louisiana Savings caused a seizure under garnishment to be made of the funds in escrow. The validity of this seizure is an issue in this case.

FACTS
In order to understand the issues and arguments of counsel, a more detailed chronicle of the facts is necessary. While numerous individuals and entities figure in the narrative of facts in this case, the only parties to this action, in the legal sense of the word, are the plaintiff Bank and defendant Association.
The saga which gave rise to the tangled relations and disputed issues of this case began with a business venture launched by three individuals, Ludwig S. Bandaries, Jr., Doyle Whittington and Henry L. Landry. These three persons became partners to promote and operate an apartment house complex in Lafayette, Louisiana, known as Acadian House Apartments. No written partnership agreement was ever entered into. No immovable property was ever acquired by the three partners. The apartment complex was constructed on property largely belonging to Wana C. Landry, sister of Henry L. Landry. Some small area appears to have belonged to Henry L. Landry, but the principal owner was Wana Landry. Tr. 464. The modus operandi of the partners was to acquire a leasehold or ground lease on the property on which the complex was built. To further complicate the legal relations, the partners did not acquire the lease of the land directly, but through a "nominee corporation" formed by them called Acadian House Apartments, Inc.[1] The partners owned equal shares, one-third each, in both the partnership and the nominee corporation.
Under the theory of the partners, the nominee corporation was in fact acting as agent for the partners. The arrangement by which the nominee corporation so acted was covered by a nominee agreement, Exhibit P-5, Tr. 100-103. The nominee agreement was entered into in writing on June 4, *99 1970.[2] The nominee agreement contains all the elements of the appointment of an agent. It is annexed to this opinion as Appendix I. In the agreement, Whittington, Bandaries, and Landry style themselves as "Lessees". They set forth in a preamble that they propose to lease certain property in the Parish of Lafayette described as the Landry property (by legal description, 2.89 acres belonging to Wana C. Landry and 0.25 acres belonging to Henry Landry). The preamble concludes with the following paragraph:
In order to expedite and simplify the lease, operation and management of the aforementioned property, lessees desire to appoint Acadian House Apartments, Inc., a corporation organized and existing under the laws of the State of Louisiana, to hold for lessees the lease to the said property, as well as any movables or other property interests connected with said lease and proposed apartment house project and to administer the same pursuant to lessees' specific instructions and written authorization. Acadian House Apartments, Inc. has agreed, subject to the terms of this nominee agreement, to act as nominee.
In addition to appointing and empowering the nominee corporation to hold the ground lease, the agreement is broad enough to also authorize the nominee to act for the partners in financing, constructing and administering the apartment project. It appears from the testimony given at the trial by Bandaries and Whittington concerning the nominee corporation device that they had been given to understand the nominee arrangement would achieve financing for the apartment construction at rates available only to corporations and permit retention of the tax consequences of direct ownership as well as limit liability exposure of partners. With the nominee agreement in existence, other features of the modus operandi followed. In order to finance improvements the Landrys would transfer title to the land to the nominee, the nominee would then mortgage the property to a lending institution and, thereafter, reconvey title to the Landrys. Thus, the mortgagee would have full rights of a mortgagee against the true owners, the Landrys; and the nominee (holding a long term lease on the land) would have the funds with which to construct the apartment complex.
Under the nominee agreement the three partners actually reaped the benefit of the apartment business. The agreement contained a provision (paragraph 3) in which it was acknowledged that "This agreement shall constitute evidence of lessees' [the partners] beneficial ownership of the lease and other property connected with said apartment house project after it is acquired by nominee." Also, the nominee agreed (paragraph 5) "Promptly upon receipt by nominee of any rental or other proceeds from the said lease or other property interests [to] remit or cause such proceeds to be remitted to lessees." Under the modus operandi described, the apartment complex came into being and operated for some time.
The next episode leading to the present legal controversy was the loan of February 28, 1975, made by American Bank to Bandaries in the amount of $228,958.47. To secure the promissory note (P-6, Tr. 104-105) Bandaries gave what the plaintiffs refer to as an assignment of Bandaries' partnership interest in the Acadian House Apartments partnership (not the nominee corporation).[3] It is included in this opinion as Appendix II. From this instrument the alleged rights of American Bank as plaintiff arise. The petition alleges recordation *100 took place on October 21, 1976.[4] Whittington was made a loan by American Bank at about the same time and gave a similar assignment. (P-8, Tr. 511-512) Both Whittington and Bandaries warranted that they owned a 331/3% interest in the partnership.
The claim of defendant, Louisiana Savings, arose out of a personal judgment obtained against Bandaries in Natchitoches Parish, Louisiana, in the Tenth Judicial District Court on December 21, 1976, for the sum of $447,508.09. This judgment was recorded in Lafayette Parish on December 28, 1976.[5]
In 1977, Bandaries and Whittington divested themselves of their one-third interest in the partnership, leaving Henry L. Landry as co-owner of one-third with a group which acquired the Bandaries and Whittington two-thirds interest. The two-thirds interest was purchased by a group of investors from Lake Charles, Louisiana, who styled themselves as an ordinary partnership known as 710 SOUTH COLLEGE ROAD. (P-2, Tr. 78-98) The transfer was made in two steps. First, Bandaries sold his interest to Whittington, and then Whittington sold his entire holding to the Lake Charles investors. Although Henry L. Landry retained his partnership interest, the Lake Charles investors (according to the testimony of their attorney) took a lease of Landry's interest. Tr. 417.
In order to follow the issues of this case it is necessary to outline in more detail the mode, sequence, and ramifications of the transfers mentioned in the preceding paragraph. The attorney for the Lake Charles investors, 710 SOUTH COLLEGE ROAD, undertook to prepare the transfer to his clients. He discovered the tangled skein of affairs forming the background of the Acadian House Apartments. He noted the absence of any recorded partnership agreement between Bandaries, Whittington, and Henry L. Landry. He noted an existing mortgage given by the nominee corporation. In particular, he noted the "assignment" of plaintiff, American Bank, and the judgment of defendant, Louisiana Savings. Apparently, the attorney for the Lake Charles investors concluded his clients' interests would be best served by having Bandaries first transfer to Whittington. Tr. 417 and Tr. 419-423.
Preliminarily, in accordance with the wishes of the Lake Charles investors, Bandaries conveyed his interest in the Acadian House Apartments partnership to Whittington on May 31, 1977. The conveyance has been referred to as a vendor's lien. Bandaries and his wife conveyed to Whittington "the interest of Vendors in and to the Acadian House Apartments and all movable property and appurtenances owned[,] held or used in conjunction therewith, said apartments being situated at 710 SOUTH COLLEGE ROAD, Lafayette, Louisiana, upon ground owned by Wanda [sic] Landry and Henry L. Landry, subject to a ground lease in favor of Acadian House Apartments, Inc., the land subject to said lease, being . . . fully described on Exhibit A attached hereto." The recited price of the sale was $110,000.00. Whittington gave his vendors lien and mortgage note for the purchase price. The sale was made subject to the existing mortgage placed on the property by the nominee corporation "and is further made subject to that certain assignment or pledge between Ludwig A. Bandaries, Jr., and the American Bank and Trust Company of Baton Rouge, Louisiana, and the rights of Louisiana Savings Association, if any, on its judgment rendered against Vendor in suit number 42590 of the Tenth Judicial District Court, Natchitoches Parish, Louisiana, in the original sum of $447, 500.09." The Bandaries-Whittington sale further provided:

*101 Purchaser acknowledges that the sale above described is subject to the liens and encumbrances hereinabove described. Vendors and Vendee acknowledge payment of the purchase price may be made on behalf of Vendors as a credit against the sums due the American Bank and Trust Company of Baton Rouge or the Louisiana Savings Association on the liens above described, which payment will constitute payment of the said promissory note and do hereby specifically authorize, direct and empower Sidney Fazio, attorney, to have the said promissory note and the proceeds thereof held subject to an escrow agreement between American Bank and Trust Company and Louisiana Savings and Loan Association for purposes of determining the party to which said proceeds are due.
Simultaneously with the execution of the sale from Bandaries to Whittington the latter gave Bandaries and his wife a counter letter. (P-4, Tr. 24-25) In the counter letter Whittington acknowledged that Bandaries had transferred to him at that time, as a part of the consideration of the sale, all of Bandaries' shares in the nominee corporation, Acadian House Apartments, Inc., with the understanding that Bandaries no longer had any ownership rights in either the partnership of Acadian House Apartments or the nominee corporation, subject to the payment of the purchase price. The counter letter also took note of the projected sale to the Lake Charles investment group. It was stated that by acceptance of the counter letter Bandaries acknowledged that payment would be made subject to the terms and conditions of the escrow agreement. The counter letter acknowledged that the purchase money note would be placed in escrow for the benefit of plaintiff and defendant, and payment of the purchase price to either, in accordance with the dispositions specified in the escrow agreement, would constitute payment of the purchase price to Bandaries.
In the sale by Whittington to the partnership of 710 SOUTH COLLEGE ROAD (the Lake Charles investors) the net funds due to Bandaries, $96,568.09, were disbursed by placing them in escrow with Calcasieu Marine National Bank. (P-2, See Disbursement sheet at Tr. 76 and contract to sell at Tr. 78-98.) As previously stated, Bandaries, American Bank, and Louisiana Savings agreed to escrow the net proceeds in an agreement executed by them on June 30, 1977. (P-1, attached to petition, Tr. 7-10). The escrow agreement, embodied in Exhibit P-1, is included herein as Appendix III. Under the escrow agreement the three signatories agreed as follows:
1. American Bank would release its assignment from Bandaries and look instead to the proceeds of the purchase price from the sale of Bandaries' interest in the partnership in escrow.
2. Louisiana Savings would release its judicial mortgage flowing from its recorded judgment and look to the Bandaries' escrow funds.
3. Bandaries agreed to the deposit of the purchase price due him in escrow with Calcasieu Marine National Bank, not to be withdrawn except pursuant to an agreement between American Bank and Louisiana Savings or a judgment of court determining the rights to the funds.
4. Bandaries pledged and assigned the net proceeds derived from his sale to Whittington to plaintiff and defendant to cover his indebtedness to them to the extent they then had a claim on the funds.
5. Bandaries agreed that the agreement would release his indebtedness to the parties only to the extent they were paid, that is, pro tanto.
6. As contained in paragraph 5, Bandaries, American Bank and Louisiana Savings agreed that:
Nothing herein is intended nor shall be construed as enlarging or diminishing in any way the respective rights of American and Louisiana insofar as their present position relative to the property conveyed is concerned; it being the intention of the parties that they will release their respective claims to the property and seek to enforce whatever rights they have against the funds in escrow.
*102 Plaintiff filed its suit for declaratory judgment on November 19, 1977, praying that the court determine whether plaintiff or defendant should have the funds. Thereafter, the defendant caused the seizure of the escrowed funds previously mentioned.[6] The defendant answered the petition and incorporated a reconventional demand in which it prayed that it be declared to have superior rights to the funds over plaintiff.

THE TRIAL COURT'S ACTION
The trial court found in favor of the plaintiff, American Bank, on the main demand and ordered the Calcasieu Marine National Bank to deliver the escrow funds, $98,568.09 with any accrued earnings due, to plaintiff. In addition to rendering judgment against defendant, Louisiana Savings Association, the court rejected its reconventional demand and assessed Louisiana Savings with the court costs. Tr. 367. A motion for new trial filed by defendant was denied; Louisiana Savings appealed devolutively to this court.

ISSUES ON APPEAL
The object of this declaratory action is to determine whether plaintiff-appellee or defendant-appellant is entitled to the funds in escrow. No issue exists relating to the judicial mortgage of Louisiana Savings. As appellant, Louisiana Savings attacks the validity of the assignment Bandaries made of his partnership interest to American Bank, the appellee. (Appendix II)
The broad issue is whether, under the facts and circumstances of this case, Bandaries could and did assign his partnership interest. The myriad arguments proffered by appellant in support of its position, set forth the general proposition that no assignment could, or did, take place. On the basis of many theoretical postulates appellant contends that no assignment could take place. Alternatively, appellant contends that a fair interpretation of the actual wording of the assignment indicates it was intended to assign income from operations of the partnership and did not extend to proceeds which might be derived from a liquidation of the partnership. Inasmuch as the funds in escrow attributable to Bandaries were derived from a sale (liquidation) of his partnership interest (to the Lake Charles investors), appellant argues that appellee Bank has no interest in, or claim to, the funds.
A final issue consists of the effect of the garnishment of the escrow funds by Louisiana Savings.
Appellant's specification of errors and listing of issues are set forth in the footnotes below.[7] We will deal with the issues *103 as we see them with as much logical order as possible.

INTENT OF THE ASSIGNMENT
The assignment of Bandaries to American Bank on February 28, 1975, is in authentic form. In purpose it is clear that Bandaries intended to give American Bank security for a loan indebtedness incurred at that time, for which he gave, as basic security, his promissory note (P-6) in the amount of $228,958.47. According to its own terms the assignment was given as additional security for the loan. Clearly, the assignment was a conditional obligation.
Viewed as a whole the assignment instrument was confected by nonlawyers to cover the waterfront. The specific language was that Bandaries "does hereby pledge, pawn, transfer, convey, sell and assign, with full subrogation" to the Bank "all of his right, title and interest" in property owned by Acadian House Apartments, "a Partnership of which partnership Assignor warrants that he is an undivided 33.33% per cent owner . . . ." The instrument recites that "as a result of said ownership of said partnership interest, Assignor owns an undivided 33.33% interest" in the immovable property described in Exhibit A attached.
The instrument further states that "Assignor also pledged [sic], pawns, transfers and assigns with full subrogation . . . all other rights of Assignor in and to, said property" and instructed the partnership "to pay all sums of money becoming due and owing to Assignor . . . as a result of said Partnership interest directly to" the Bank.
The following critical language follows:
It is the intention of Assignor that the American Bank and Trust Company, Baton Rouge, Louisiana, shall receive the entire interest of Ludwig S. Bandaries, Jr. in any income of whatsoever kind produced by said property for any reason whatsoever.
The assignment instrument also provided that:
The American Bank and Trust Company..., by accepting this assignment, does not assume any of the obligations of Ludwig S. Bandaries, Jr. or Acadian House Apartments Partnership, and Ludwig S. Bandaries, Jr. hereby agrees and does by these presents hold the American Bank and Trust Company . . harmless from any and all debts or obligations of his or of the aforesaid Acadian House Apartments Partnership.

LEGAL IMPORT OF THE ASSIGNMENT
The trial court did not specifically classify the assignment. It concluded, however, that "the ownership of the interest[,] or the privilege created by the pledge in favor of the American Bank & Trust[,] would be a superior claim over the judicial mortgage in favor of Louisiana Savings[,] created by its judgment being recorded at a later date."
What was the nature of the "assignment"?
Appellant initially attacks the assignment instrument on the ground that it does not reflect a true assignment. As we understand the argument it is contended that the instrument does not purport to transfer "credits, rights or claims" within the definition of an assignment under our Civil Code as contained in LSA-C.C. art. 2642. Therefore, it does not reflect a true sale, i. e., a transfer. Appellant suggests that the instrument could not have been a true assignment, or sale, because the device was intended rather as a pledge, and disclaiming *104 language clearly negatived any intention of the American Bank to succeed Bandaries as a partner in the partnership.
We think the argument is strained. Assuming that the instrument may have been poorly drafted from a technical standpoint, nevertheless the objective of the parties is obvious. More important, however, is the fact that this court has approved the use of an assignment as a security device. Dauzat v. Simmesport State Bank, 167 So.2d 681 (La.App.3rd Cir. 1964). At issue there was the defendant bank's right to funds received pursuant to an assignment of payments or benefits due Gremillion. Gremillion entered a construction contract with Atlas Construction Company. To finance his operations Gremillion assigned to Simmesport State Bank all payments or benefits Gremillion was entitled to receive from Atlas under the construction contract. Plaintiff Dauzat performed work for Gremillion. Plaintiff placed a check received from Gremillion with the bank for collection. The issue in the case was the right of the bank to apply receipts from Atlas under the assignment to Gremillion's overdrafts and to credit the balance to payment of Gremillion's secured notes. Plaintiff Dauzat contended the bank should have placed all of the funds in Gremillion's checking account. Had it done so, Gremillion's checking account would have contained sufficient funds from which the check placed with it by Dauzat for collection could have been paid.
In the course of the opinion we said:
At the time Gremillion assigned to the bank the benefits which he expected to receive under his contract with Atlas, he was indebted to the bank and the bank obtained the assignment as security for the loans which it had made to Gremillion.
In Chapter 12 of Title VII of the LSA-Civil Code, which chapter is entitled, "Of the Assignment or Transfer of Credits and other Incorporeal Rights," are the following pertinent articles:
"Art. 2642. In the transfer of credits, rights or claims to a third person, the delivery takes place between the transferrer and the transferree by the giving of the title."
"Art. 2645. The sale or transfer of a credit includes everything which is an accessory to the same; as suretyship, privileges and mortgages."
Applying the above quoted articles of our Civil Code to the facts presented here, we think the assignment executed by Gremillion to the bank had the effect of transferring to the bank the ownership of the funds paid to it by Atlas, at least until Gremillion's indebtedness to the bank had been fully satisfied. The evidence shows that the bank did not receive funds from Atlas in excess of the overdrafts and notes owed to the bank by Gremillion. Since the bank became the owner of the funds paid to it by Atlas in November, 1961, and in March, 1962, it was under no duty, either as collecting agent for Dauzat or as drawee of the check, to deposit these funds to Gremillion's checking account or to pay the check with those funds in preference to the payment of debts which Gremillion owed the bank.
No authority has been pointed out to us, and we know of none, which prohibits a banking institution from obtaining an assignment of benefits as security for a loan which it has made, and from subsequently enforcing this security and applying the proceeds toward the payment of that loan, even though the bank may be the collecting agent for another creditor of the borrower.
In Dauzat v. Simmesport State Bank, supra, we held that ownership of the payments and benefits due passed to the Bank until the indebtedness owed to it had been satisfied. Nevertheless, the transfer was a security transaction. The ownership assigned was security for a loan. Under the circumstances it is clear that the assignment was conditional, that is, conditioned upon Gremillion not having repaid his loan prior to the payment of funds due Gremillion by Atlas to the Simmesport State Bank.
*105 We adhere to the position we took in Dauzat v. Simmesport State Bank. Therefore, even assuming that the assignment by Bandaries to American Bank fails to fulfill all the technical requirements of a true assignment or transfer of credit, rights or claims (principally in failing to unconditionally pass title), such an assignment may serve as a security device. In determining the nature of a transaction, the courts will look to the substance rather than to the mere terms used to describe it. A contract of security may be in the form of a sale. Liberty Farms, Inc. v. Miller, 216 La. 1023, 45 So.2d 610 (La.1950) and Ford v. Parsons, 142 La. 1093, 78 So. 128 (La.1918). Cf. Associates Financial Services, Inc., v. McClendon, 367 So.2d 91 (La.App. 4th Cir. 1979).
Appellant further suggests that the document could not constitute an assignment because American Bank did not assume any obligations of Bandaries as the partnership known as Acadian House Apartments. Appellant urges that American Bank would step into Bandaries shoes through an assignment and thus, become liable for his share of partnership losses as well as profits. Therefore, appellant argues that since the assignment instrument disclaimed any obligation to share in partnership losses, it must be assumed that the parties did not intend for a true assignment or transfer of ownership to take place. We are not persuaded by this argument, particularly as we are convinced that an assignment for security purposes may be effected if the instrument as a whole reflects that such was the intention of the parties. In construing LSA-C.C. art. 2642 our courts have taken the view that no special form or words are necessary to constitute a valid assignment. Producing Manager's Company, Inc. v. Broadway Theater League of New Orleans, Inc., 288 So.2d 676 (La.App. 4th Cir. 1974); Rolf v. Lewis, 165 So.2d 12 (La.App. 2nd Cir. 1964); Thomas v. Young, 71 So.2d 368 (La.App. 1st Cir. 1954) and Strudwick Funeral Home v. Liberty Industrial Life Insurance Co., 176 So. 679 (La. App.Orl. 1937).
Did use of the word "pledge" invalidate the security transaction as an assignment?
Louisiana Savings urges that the assignment in question employs the word "pledge", and that it is impossible to have an assignment and a pledge of the same thing at the same time. Appellant cites as authority the cases of People's Bank & Trust Co., Natchitoches v. Harper, 370 So.2d 1291 (La.App. 3rd Cir. 1979) and Scott v. Corkern, 231 La. 368, 91 So.2d 569 (La.1956).
The complete wording initially employed in Bandaries' assignment to American Bank was: "Assignor does hereby pledge, pawn, transfer, convey, sell and assign, with full subrogation . . ." Further, the instrument states: "Assignor also pledged [sic], pawns, transfers and assigns with full subrogation . . . all other rights..." Finally, the instrument states: "It is the intention of Assignor that the American Bank . . . shall receive the entire interest of . . . Bandaries . . . in any income of whatsoever kind produced by said property for any reason whatsoever." The instrument directs the partnership to pay all sums accruing to Bandaries from the partnership to American Bank, and it is provided that all monies thus paid to the bank be applied by the bank toward payment of the note secured.
Considering all the language employed, we do not conclude that a pledge was actually intended despite the fact that the word "pledge" was also utilized along with "transfer," "convey," "sell" and "assign".
We recognize that it has been held in the cited cases that there cannot be an assignment and a pledge of the same thing at the same time.[8] However, insofar as the two *106 cases cited are concerned, they are clearly distinguishable from the case before us. Nothing in Scott v. Corkern, supra, indicated that anything other than a pledge of an insurance policy was intended. Interestingly, the Louisiana Supreme Court found that recovery of the policy by the pledgor did not extinguish the pledge. In Peoples Bank & Trust Company a pledge form was labeled "Assignment of Savings/Time Deposit Account". The language of the printed form in question as filled out read: "FOR VALUE RECEIVED, I/we hereby assign to you my/our Savings Cert account No. 3552(14) as security for Loan Seven Thousand & no/100 DOLLARS ($7,000.00) ." The account designed as security for the $7,000.00 loan was a $10,000.00 savings certificate in Progressive Savings & Loan Association. The savings association was notified of the assignment, but the bank failed to obtain possession of the savings certificate. The saving association permitted the pledgor, Harper, to withdraw most of the funds. Harper failed to repay the loan to the bank. In a suit by the bank against Harper and the savings association this court held that the bank could not recover from the savings association. The instrument in question clearly revealed "that the rights granted by it were no greater than those granted to a pledgee under Civil Code article 3157" and the bank did not own the funds. The testimony in the record indicated that the bank intended to create a pledge. In that case we said:
In all of the cases cited by counsel for the bank, there was a transfer of the right to receive funds in full ownership as they accrued, until such time as the indebtedness was paid. In Dauzat v. Simmesport State Bank, 167 So.2d 681 (La.App. 3rd Cir. 1964), payments due under a construction contract were assigned, giving the assignee a present right to receive the funds and apply them to the indebtedness. Bossier Bank & Trust Company v. Natchitoches Development Company, Inc., 272 So.2d 731 (La. App. 3rd Cir. 1973), dealt with an assignment under the Louisiana Assignment of Accounts Receivable Act, LSA-R.S. 9:3101, et seq., special legislation, designed to regulate a particular type of assignment, which is not applicable here.
In the Peoples Bank case, we did as we do here. We looked to the intent of the parties. In Peoples Bank, we found a pledge rather than an assignment was intended, although the word "assignment" only was employed. Here both "pledge" and "assignment" are employed (along with other words), but we find the intent was to give an assignment. It should be noted that other words used included "transfer," "sell," and "convey," all words of alienation consistent with "assignment".
Was the assignment invalid because it failed to adequately describe the subject of the assignment or because the thing assigned was not subject of legal alienation?
In its brief before this court, Louisiana Savings asserts that "the American Bank's pledge was not perfected because the document failed to describe either the thing adequately or a thing susceptible of legal alienation." Appellant cites for this proposition the recent case of Edco Properties v. Landry, 371 So.2d 1367 (La.App. 3rd Cir. 1979). Appellant refers to the legal concept that a partnership is a legal entity separate from the partners and to the fact that *107 partners do not have a direct interest in the partnership assets.
Before approaching the argument we should digress to note that appellant also urges that no partnership interest in Bandaries existed. Appellant points out that under LSA-C.C. art. 2836 a partnership which has not recorded a partnership agreement cannot own immovable property.[9]Montgomery v. Snyder, 363 So.2d 1286 (La.App. 4th Cir. 1978), writ denied, 366 So.2d 573 (La.1979). However, if immovable property is bought in the name of what purports to be a partnership which has not recorded its partnership agreement, the title to the property automatically rests in the partners in their individual capacities. Gulf Union Mortgage Corp. v. Michael & Barber Construction Co., 251 So.2d 459 (La. App. 1st Cir. 1971); American Bank and Trust Company v. Michael, 244 So.2d 882 (La.App. 1st Cir. 1971), application not considered, 258 La. 368, 246 So.2d 685 (La. 1971); McRoberts v. Hayes, 173 So.2d 27 (La.App. 4th Cir. 1965), affirmed 248 La. 676, 181 So.2d 390.
If the nominee corporation was the mere mandatary or agent of Bandaries, Whittington, and Landry, it would follow, therefore, that title to the leasehold vested in each of these three partners in the proportions of a one-third undivided interest each. If that be the case, then arguments that Bandaries could not assign his partnership interest are immaterial. We are inclined to believe that this probably is the case. It is not necessary to ground our decision on this proposition, however, as we are of the opinion that Bandaries could give a valid assignment whether we conclude there was no partnership or that there was.
We feel it appropriate to again digress before considering the theoretical possibilities for assignment by Bandaries of his "partnership interest," or whatever it might be. Appellant asserts the following in its brief.
In stating . . . that this act [assignment to American Bank] failed to describe a thing susceptible of legal alienation, the Association says that the act describes and takes as security only the property "being owned by Acadian House Apartments, a partnership . . .," and Bandaries did not own this. Bandaries warranted only his partnership interest, and that only as a result of this partnership share did he own his share in the real property described. This latter ownership cannot be for the reasons stated in Edco Properties, supra.
In other words, appellant asserts that under principles discussed in Edco Properties, Bandaries could not alienate or give a security right in the leasehold on the real estate involved. (The assertion would have to rest upon an assumption that the partnership did have an interest in the leasehold.) If the thrust of this particular contention is leveled at the technical wording, we grant that the assignment was inexpertly drafted and expressed. Nevertheless, as we have previously remarked, we look to the document as a whole for the purpose of reading its intent. The first reference in the assignment instrument appears to be an assignment of all of Bandaries right, title and interest in and to the immovable property itself, while, as a matter of fact, the nominee corporation had only a leasehold interest. However, a second assignment clause pledges, pawns, transfers and assigns "all other rights of Assignor in and to said property". This is followed by instruction and direction to the partnership to pay over to American Bank all sums of money to become due and owing to Bandaries after the date of the assignment. Lastly, as we have previously observed, the intention of the assignor was stated to be that the American Bank "shall receive the entire interest of Ludwig S. Bandaries, Jr. in any income of whatsoever kind produced by said property for any reason whatsoever." (Emphasis supplied.)
*108 Although all of the above efforts at assignment are, or appear to be, keyed into the immovable itself (described in Exhibit A annexed to the assignment), it is obvious that Bandaries intended to assign whatever he had or owned. We regard the assignment instrument as having validly assigned whatever Bandaries held or owned individually.
In Edco Properties, a partnership was party to a leasehold agreement with a landowner under which the partnership held an option to purchase the landowner's 97-acre tract. The suit was for specific performance. One of the questions dealt with in Edco Properties was whether a transfer of partnership interest by certain partners constituted a transfer of an interest in the lease-option agreement. It was held that the transfer of partnership interests by certain individual partners of Edco did not effect a transfer of any interest in the lease-option agreement. The partners had no specific interest in the agreement because it was an asset of the partnership entity. This result flowed from the general principle that a sale by one partner of his interest in an unliquidated partnership is neither a sale of specific property nor of any interest in specific property. Posner v. Little Pine Lumber Co., 157 La. 73, 102 So. 16 (La.1924).
All that the principle discussed in Edco Properties stands for is that partners and the partnership are separate entities. Hence, if title to property is taken by the partnership, individual partners may not alienate any interest in the property. However, Edco Properties does not hold that a partnership interest itself may not be alienated or transferred. Under LSA-C.C. art. 2823 a partner's share may be seized and sold to satisfy his individual creditors, subject to the debts of the partnership and with creditors of the partnership enjoying a preference over individual creditors. LSA-C.C. art. 2815 authorizes the donation or sale of partnership profits. LSA-C.C. art. 2871 authorizes partners, without consent of his co-partners, to enter into a partnership with a third person "for the share which he has in the partnership."
We do not believe that the Bandaries assignment to American Bank either inadequately described the thing assigned, or that the thing was not susceptible of legal alienation. However, ineptly couched, the assignment was intended to assign as security, Bandaries' interest in the partnership, not partnership assets, and that interest could be alienated including alienation through assignment as security. When the sale of the interest was made by Bandaries to his co-partner Whittington, the sale and counter letter fully recognized American Bank's recorded rights under the assignment as well as Louisiana Savings' rights under its judicial mortgage. In our opinion, the rights of American Bank followed the proceeds, and the question is simply which litigant has the prime privilege.
It should be noted that in the sale from Bandaries to Whittington, the counter letter acknowledged that Whittington had not only transferred his partnership interest but also transferred all shares owned by Bandaries in Acadian House Apartments, Inc., "so that it is our intention that you [Bandaries] shall no longer have any ownership rights in the Acadian House Apartments, the Partnership relative thereto, or the corporation which is nominee of title to the property, subject only to the rights of payment of the purchase price to the parties designated herein relative thereto [American Bank and Louisiana Savings]". P-4, Tr. 24-25. The counter letter also referred to the placement of the funds in escrow to be paid to appellant or appellee in accordance with the terms of the escrow agreement, that is, through mutual agreement or judgment of court.
Thus, it would appear to us that, whether a partnership never existed because of the failure to record a partnership agreement, or whether a partnership did exist under some theory, Bandaries held valuable rights of some nature. As the Lake Charles investors were willing to pay the sum of $110,000 for this interest, its value evidently, was not inconsiderable.
*109 Defendant-appellant, Louisiana Savings, takes the position that Bandaries attempted to give, and American attempted to take, an assignment of an interest in the leasehold agreement, and that such could not be done. The first reason given was that the nominee agreement was defective or "incomplete", as it is characterized in defendant-appellant's brief. For the second reason given, that Bandaries as a partner could not assign a direct interest in the leasehold, defendant-appellant cites a number of cases: Turner v. Snype, 162 La. 117, 110 So. 109 (La.1926); Evergreen Plantation, Inc. v. Zunamon, 291 So.2d 414 (La.App. 2nd Cir. 1974); Republic Petroleum Corp. v. U. S., 397 F.Supp. 900 (DC, ED La.1975); McRoberts v. Hayes, 173 So.2d 27 (La.App. 4th Cir. 1965); Harrington v. Harrington, 151 So. 648 (La.App. 2nd Cir. 1934); and Pendleton v. Ricca, 232 So.2d 803 (La.App. 4th Cir. 1970).
As we have iterated numerous times in this opinion, we determine the intent of the assignment by reference to the document as a whole. It is true that, in part, the assignment appears to assign, directly, an interest in the immovable itself (not, as a matter of fact, a mere leasehold).[10] We deem this to be immaterial inasmuch as the document as a whole clearly shows an intention to assign whatever Bandaries had. Hence, we do not regard the cited cases as pertinent or in any way dispositive of any issues in this case. In charging that the nominee agreement was incomplete, we assume that appellant refers to the fact that the copy in evidence, P-5, was not signed by Henry L. Landry as president and representative of the nominee corporation. We observed in footnote number two that this failure appeared to be immaterial because Landry signed as a partner with the other two partners, and he, therefore, must have been committed to the nominee agreement in his representative, as well as his individual, capacity.
In any event, although a mandate is completed only by the acceptance of the mandatary, LSA-C.C. art. 2988, it may be tacitly accepted and may be accepted by posterior acts under LSA-C.C. art. 2989. The course of events in this case persuasively shows that the nominee corporation accepted its mandate from the three partners, and the administration of the affairs of the corporation for the benefit of the partners (either as partners or as individuals, whosoever it may be) shows ratification through Henry L. Landry as president of the corporation.
Louisiana Savings suggests that because the public records reflect no connection between the nominee corporation and the partnership or partners, the latter have no claims in or against the nominee corporation. We disagree.[11] For the same reason, Louisiana Savings urges that plaintiff American Bank can acquire no privilege rights against the nominee corporate assets, including the leasehold. This is true, of course, since the nominee corporation was the record title holder. However, neither plaintiff nor defendant is seeking to enforce rights of privilege against the corporate assets. When American Bank recorded its *110 assignment from Bandaries it affected and attached to his interest in the partnership. The privilege then operated against the interest of Bandaries, not the partnership property itself. When the Bandaries' interest was sold and ultimately converted to liquid funds for the account, the privilege followed these funds. By like token, the privilege of Louisiana Savings resulting from its judicial mortgage also followed and attached to the funds. The question is which claim primes between the two.

ALLEGED INTERPRETATION OF THE ASSIGNMENT BY AMERICAN BANK
Defendant-appellant has devoted a section of its brief filed in this court to what it refers to as testimony on the bank's own contemporaneous construction of the assignment. The arguments set forth in that section of appellant's brief do not persuade us.
Louisiana Savings urges that it is significant that American Bank never made a "demand for participation as a two-thirds partner in the affairs, nor claimed any right to the partnership itself or its assets." (The reference to two-thirds covers the assignment given by Whittington to the American Bank as well as Bandaries' assignment.) Appellant also refers to the fact that the American Bank never took any partnership tax losses and did not bother to record its assignment from Whittington and Bandaries until October 21, 1976, although they were executed on March 10 and February 28, 1975, respectively, and, further, that it did not notify the third partner, Henry L. Landry, of the assignment until June 16, 1976. We attach no significance to these facts. We have indicated above that the assignment was conditional as a security device. In Peoples Bank & Trust Company, Natchitoches v. Harper, supra, in distinguishing Dauzat v. Simmesport State Bank, supra, we pointed out that the payments accruing under the construction contract and assigned to the bank in Dauzat gave the assignee "a present right to receive the funds and apply them to the indebtedness". Here, American Bank was merely interested in security for its loan and repayment of its loan; it is of no import that it failed to assert the rights of an active partner, assuming that it could legally do so.
Appellant dwells to some extent on the testimony of Mr. W. M. Hurst, the American Bank officer who made the loan to Bandaries and who apparently had something to do with drafting the assignment agreement. We see nothing meaningful in the portions of Mr. Hurst's testimony to which we are directed, nor is it a significant fact that the assignment may have been rushed through to get all the security the bank could obtain.
Counsel for appellant questioned the attorney for the Lake Charles investors as a legal expert. Counsel sought this attorney's opinion as to what he considered to be the nature of the "property" ownership of Bandaries and Whittington. Appellant considered this testimony important, as the Lake Charles investors' attorney made a title examination and investigated the relationship of all parties, including the partnership, the nominee corporation, the three individual partners and plaintiff and defendant in this case. Appellant urges it is significant that no conveyance or transfer of rights was sought from the American Bank.[12] As appellant admits, the American Bank made no claim of ownership as such. On the other hand, its rights were thoroughly protected through the procedure suggested by the purchasing Lake Charles investors. These procedures included the counter letter given by Whittington to Bandaries, the escrow agreement, and the control retained over the ultimate distribution of the purchase money funds given by the Lake Charles investors and exercised through their attorney. The bank's security interest was not only respected and protected, but was in fact discharged through payment. P-2, Tr. 76. In the distribution *111 of the funds paid by the Lake Charles investors, of the net funds due, the attorney for the investors was authorized to pay $96,568.09 due Whittington to him and to American Bank and Trust Company. The attorney was authorized to pay $96,568.09 due Bandaries to Calcasieu Marine National Bank, in escrow. Thus, the conditional ownership rights of American Bank were recognized and fully taken into account by the investor's attorney. For this reason, the American Bank did not have to take steps, other than recording the assignment, to protect itself. (It should be noted that the sale from Bandaries to Whittington with the counter letter was a credit sale with a vendor's lien being given by Whittington, and no money passed to Bandaries. The purchase price in the sale from Whittington to the investors was distributed so that, although Whittington conveyed the one-third interest acquired from Bandaries, the portion of the purchase price attributable to Bandaries was segregated and went into escrow. Hence, Whittington's debt to Bandaries was discharged and the payment due Bandaries' was protected and is being held in escrow. In the escrow agreement American Bank agreed to give the investors a release of its assignment.)

THE SEIZURE UNDER GARNISHMENT BY LOUISIANA SAVINGS
As earlier recounted, Louisiana Savings caused the funds in escrow with Calcasieu Marine National Bank to be seized under garnishment. Louisiana Savings was a party to the escrow agreement along with Bandaries and American Bank. The parties agreed that nothing in the escrow agreement should be construed as enlarging or diminishing the respective rights of Louisiana Savings or American Bank. As we understand the position of Louisiana Savings as set forth in its brief (pages 19 & 20), it does not seek to gain a superior position over the bank, nor does it seek to ignore the escrow agreement. Louisiana Savings makes the candid assertion that, after the filing of this suit and further analysis of the matter, it "questioned the prospect that neither the Bank nor it [Louisiana Savings] may have a really enforceable claim." Therefore, Louisiana Savings felt it prudent to issue the garnishment solely "to establish an ultimate privilege on the money" in the event that it should be found that neither Louisiana Savings or American Bank "had a privilege priming Bandaries' claim to it".
Inasmuch as this is the construction which Louisiana Savings places on its own garnishment and seizure, the question is moot as a result of our decision.

CONCLUSION
In its brief appellant Louisiana Savings more than once states that classification or characterization of the partnership interest of Ludwig S. Bandaries, Jr., and of American Bank's claim is not critical. We think that is correct. Admittedly, the thing acquired by the bank may be sui generis, or at least somewhat out of the ordinary. Nevertheless, we are satisfied that Bandaries was the owner of a certain thing which he could and did assign to American Bank. What American Bank acquired included a privilege on the thing owned by Bandaries and affected third parties upon recordation. Our recent pronouncements in Edco Properties v. Landry, supra, authored by Judge Guidry, emphasize the distinction, not only between partners and partnerships as separate legal entities, but also emphasize the right of a partner to deal with his partnership interest per se as distinguished from the assets of the corporation itself. In Edco, at page 1372, it was said that when two of the original partners transferred their partnership interests to others, "they were transferring only an individual interest in an unliquidated partnership, the value of which would be determined after all partnership affairs were settled and unliquidated assets liquidated."
Thus, Edco recognized the transferability of a partnership interest separate from ownership in the assets of the partnership. The panel which considered Edco considered, but declined to decide, precisely what happens to a partnership as a result of *112 a change in the number or identity of the partners. We do not decide that question. Moreover, we do not consider that it was necessary for the American Bank to assume the role of an active partner in accepting an assignment of Bandaries' or Whittington's interests in the partnership of Acadian House Apartments. Under the Dauzat formula, we think a present interest with the right to receive funds due from the partnership, a security device, was authorized. It was a conditional assignment. Insofar as a transfer of partnership assets might be concerned, this could not be legally accomplished under the decision in Edco. On the other hand, American is not asserting a privilege on partnership assets. It is making a claim for the price paid for the sale of the partnership interest on which it held an assignment. The assignment instrument as a whole is sufficiently broad to convey the partnership interest alone.
Louisiana Savings also urged that the instrument, in any event, should be limited to assigning income from operations and should not extend to monies paid as purchase money for a partnership interest. We again look to the assignment interest as a whole. As a whole, we do not think the assignment contemplated income only.
For the foregoing reasons the judgment of the trial court is affirmed. Costs of this appeal will be paid by defendant-appellant.
AFFIRMED.

APPENDIX I

[NOMINEE AGREEMENT]

(Plaintiff's Exhibit No. 5)
STATE OF LOUISIANA )
 )
PARISH OF LAFAYETTE)
BEFORE ME, the undersigned Notary Public, duly commissioned and qualified as such, within and for the aforesaid Parish and State, personally came and appeared
DOYLE WHITTINGTON, a married man, the maiden name of whose wife is Dorothy Cotton;
HENRY L. LANDRY, a married man, the maiden name of whose wife is Hilda Deffez; and
LUDWIG S. BANDARIES, JR., a married man, the maiden name of whose wife is Kahne Rae Dipaola ;
all residents of the Parish of East Baton Rouge, Louisiana,
who deposed and declared as follows:
That appearers (hereinafter referred to as "LESSEES") propose to lease certain property in the Parish of Lafayette, Louisiana, more fully described as follows, to-wit:
A certain lot or parcel of ground, together with all improvements thereon, and all rights, ways, privileges and servitudes thereunto appertaining, situated in Section 48, Township 10 South, Range 4 East, in the City and Parish of Lafayette, Louisiana, being designated as two unnumbered contiguous tracts bearing the names of Wana C. Landry and Henry Landry on "A topographic map of Henry Landry" dated September 16, 1968, containing 2.89 acres or 126,007 square feet in the name of Wana C. Landry and containing 0.25 acre or 11,044 square feet in the name of Henry Landry according to said map, and having the dimensions and being subject to the rights, ways, privileges and servitudes thereon shown, a copy of said map being attached hereto and made a part hereof by reference and being the property within the figure formed by the letters ABCDEFGHIA shown on said plat; being a portion of the same property acquired by Wana C. Landry by Act Nos. 265600 and 537068 of record in the Office of the Clerk of Court for the Parish of Lafayette, Louisiana.
In order to expedite and simplify the lease, operation and management of the aforementioned property, lessees desire to appoint Acadian House Apartments, Inc., a *113 corporation organized and existing under the laws of the State of Louisiana, to hold for lessees the lease to the said property, as well as any movables or other property interests connected with said lease and proposed apartment house project and to administer the same pursuant to lessees' specific instructions and written authorization. Acadian House Apartments, Inc. has agreed, subject to the terms of this nominee agreement, to act as nominee.
NOW, THEREFORE, THIS AGREEMENT WITNESSETH:
1) Lessees hereby designate and appoint Acadian House Apartments, Inc. (sometimes hereinafter referred to as "NOMINEE") as lessees' nominee solely for the purpose of holding for lessees the lease to the abovesaid property and of acting with respect to said property and any other movables acquired by lessees in connection with said project pursuant to lessees' specific instructions and written authorizations.
2) Nominee shall have no authority to and shall not take any action, sign any documents, make any decisions, or do or perform any act whatsoever relating to lessees' lease and property interest, which involves the discretion or judgment of nominee, but shall act at all times only on written consent or authorization or lessees expressed and provided in this agreement or any subsequent direction or authorization.
3) This agreement shall constitute evidence of lessees' beneficial ownership of the lease and other property connected with said apartment house project after it is acquired by nominee.
4) Nominee shall act promptly in accordance with the written directions of lessees with respect to any matters arising in connection with the property. Lessees may from time to time designate in writing an agent or committee to give direction or authorization which lessees have reserved to themselves under this agreement. At this time, lessees hereby designate Doyle Whittington, Henry L. Landry and Ludwig S. Bandaries, Jr. as their agents, and as a committee to perform any act which they themselves could do and to give to nominee any directions or authorization which they themselves could give, including directions with respect to acquisition, hypothecation, alienation and any use of the property. Until written revocation of this agency is received by nominee, nominee shall and is hereby authorized to act upon any instructions or directions given to it by the aforementioned Doyle Whittington, Henry L. Landry and Ludwig S. Bandaries, Jr.
5) Promptly upon receipt by nominee of any rental or other proceeds from the said lease or other property interests, nominee shall remit or cause such proceeds to be remitted to lessees.
6) Lessees shall pay to nominee for nominee's services under this agreement, actual cost to nominee of such services. Lessees hereby indemnify nominee, its officers and directors, against any loss or liability resulting from any claim asserted against nominee by reason of its acting pursuant to and in accordance with the terms, provisions and conditions to this agreement.
7) Lessees hereby agree to pay their pro rata part of the rental of the leased property, or any other property interests acquired, interest thereon and other costs and expenses involved in the lease or acquisition of property connected with the proposed apartment house project, reasonably in advance of the time when the same shall become due upon the call by nominee in proportion to their ownership of said lease and/or other properties acquired, as set out in Exhibit B, a copy of which is attached hereto and made a part hereof by reference, and this obligation shall be enforceable either by nominee on behalf of the lessees or by any or all of the lessees.
Lessees shall hold the property acquired and lease obtained as owners in indivision, and agree to continue to hold property as owners in indivision, without partition, for a period of 10 years from its acquisition.
8) This agreement shall be binding upon and may be enforced by lessees, their heirs, successors and assigns and legal representatives, and shall be binding upon and may be enforced by nominee.
*114 9) Acadian House Apartments, Inc. agrees to act as nominee for lessees for the purposes and subject to the terms, conditions and provisions of this agreement.
10) This nominee agreement may be executed in any number of counterparts, each of which shall constitute an original, and all such counterparts so executed and delivered shall constitute but one and the same instrument.
THUS DONE AND SIGNED in the Parish of Lafayette, Louisiana, on the 4th day of June, 1970, in the presence of the undersigned competent witnesses, who sign with appearers and me, Notary, after due reading of the whole.
WITNESSES: ACADIAN HOUSE APARTMENTS, INC.
 By________________________________
 s/ signature illegible Henry L. Landry, President
 s/ Doyle Whittington 
 s/ Judie E. Lannes DOYLE WHITTINGTON
 __________________________________
 HENRY L. LANDRY
 s/ signature illegible 
 s/ Ludwig S. Bandaries, Jr. 
 LUDWIG S. BANDARIES, JR.

 SCHEDULE B
Name Percentage of total ownership
DOYLE WHITTINGTON 33%
HENRY L. LANDRY 34%
LUDWIG S. BANDARIES, JR. 33%

APPENDIX II

[ASSIGNMENT BY BANDARIES TO AMERICAN BANK] (TR. 26-29)
ASSIGNMENT UNITED STATES OF AMERICA
BY: LUDWIG S. BANDARIES, JR. STATE OF LOUISIANA
AND: AMERICAN BANK AND TRUST
 COMPANY, BATON ROUGE,
 LOUISIANA PARISH OF EAST BATON ROUGE
BE IT KNOWN, that on this 28th day of February, 1975,
BEFORE ME, Frederick Kroenke, Jr., a Notary Public, duly commissioned and qualified in and for the Parish of East Baton Rouge, State of Louisiana, therein residing, and in the presence of the witnesses hereinafter named and undersigned:
Personally came and appeared:

LUDWIG S. BANDARIES, JR.,
a resident of the full age of majority of the Parish of East Baton Rouge, Louisiana, married but once and then to Kahne Dipaola Bandaries, born Dipaola, with whom he is presently residing, hereinafter called "Assignor",
who declared that he is indebted unto the American Bank and Trust Company, Baton Rouge, Louisiana, in the principal sum of Two Hundred Twenty-eight Thousand Nine Hundred Fifty-eight and 47/100 ($228,958.47) Dollars, represented by Assignor's certain promissory note dated this day to the order of and by the maker endorsed payable on demand at American Bank and Trust Company, Baton Rouge, Louisiana in *115 the City of Baton Rouge, Louisiana, for the sum of Two Hundred Twenty-eight Thousand Nine Hundred Fifty-eight and 47/100 ($228,958.47) Dollars, together with interest from date on the unpaid principal balance hereof until maturity (whether as stated or by acceleration) or demand, according to the tenor hereof, at the rate per annum established by the American Bank and Trust Company, Baton Rouge, Louisiana, from time to time as the prime rate charged on loans to its principal commercial borrowers, plus two (2%) percent. As further and additional security of the aforesaid note and principal, interest and attorney's fees, and the performance of all obligations of assignor in accordance with his obligation, Assignor does hereby pledge, pawn, transfer, convey, sell and assign, with full subrogation, unto the American Bank and Trust Company, Baton Rouge, Louisiana, all of his right, title and interest in and to the following described property, said property being owned by Acadian House Apartments a Partnership of which partnership Assignor warrants that he is an undivided 33.33% percent owner in said Partnership, and that he is able under the terms of any existing partnership agreement to enter into this act, and, that as a result of said ownership of said partnership interest, Assignor owns an undivided 33.33% interest in the below described property, said property assigned herein being more particularly described as follows, to-wit:
That certain property described on Exhibit "A", attached hereto and made a part hereof and paraphed for identification herewith by Frederick Kroenke, Jr., Notary Public.
Assignor also pledged, pawns, transfers and assigns with full subrogation unto the American Bank and Trust Company, Baton Rouge, Louisiana, all other rights of Assignor in and to, said property, and does hereby instruct and direct the aforesaid Acadian House Partnership to pay all sums of money becoming due and owing to Assignor after the date first above written as a result of said Partnership interest directly to the American Bank and Trust Company, Baton Rouge, Louisiana, at Baton Rouge, Louisiana, and said American Bank and Trust Company, Baton Rouge, Louisiana is fully authorized to give receipts in its own name and in the name of Assignor for all such payments.
All monies paid to the aforesaid American Bank and Trust Company, Baton Rouge, Louisiana by the said Partnership will be applied by American Bank and Trust Company, Baton Rouge, Louisiana, for the payment of the aforesaid note described herein.
It is the intention of Assignor that the American Bank and Trust Company, Baton Rouge, Louisiana, shall receive the entire interest of Ludwig S. Bandaries, Jr. in any income of whatsoever kind produced by said property for any reason whatsoever.
The American Bank and Trust Company, Baton Rouge, Louisiana, by accepting this assignment, does not assume any of the obligations of Ludwig S. Bandaries, Jr. or Acadian House Apartments Partnership, and Ludwig S. Bandaries, Jr. hereby agrees and does by these presents hold the American Bank and Trust Company, Baton Rouge, Louisiana harmless from any and all debts or obligations of his or of the aforesaid Acadian House Apartments Partnership.
THUS DONE AND PASSED on the date first above written, before me, Notary, and the undersigned competent witnesses after due reading of the whole, in my office in Baton Rouge, Louisiana.
*116
WITNESSES: ASSIGNOR:
s/ Debbie Graves s/ Ludwig S. Bandaries, Jr. 
 LUDWIG S. BANDARIES, JR.
s/ Diane Allen ACCEPTED:
 AMERICAN BANK AND TRUST COMPANY,
 BATON ROUGE, LOUISIANA
 BY: s/ W. M. Hurst 
 s/ Frederick Kroenke, Jr. 
 Frederick Kroenke, Jr., Notary Public
(Exhibit "A" Legal Description Omitted)

APPENDIX III

[Escrow Agreement]

(Plaintiff's Exhibit No. 1)
STATE OF LOUISIANA :
PARISH OF CALCASIEU :
PARISH OF EAST BATON ROUGE :
BE IT KNOWN that on the dates hereinafter set forth below and before the undersigned Notaries Public, duly commissioned and qualified in and for the respective Parishes and State and in the presence of the witnesses hereinafter named and undersigned;
PERSONALLY CAME AND APPEARED:
LUDWIG S. BANDARIES, JR.,
a resident of lawful age of the Parish of East Baton Rouge, Louisiana, married but once and then to Kahne Dipaola Bandaries, born Dipaola, with whom he is now living, (hereinafter "Bandaries"), and
AMERICAN BANK & TRUST COMPANY,
a Louisiana Banking corporation domiciled and having its principal place of business in the Parish of East Baton Rouge, Louisiana, represented herein by its undersigned officer, duly authorized, (hereinafter "American"), and
LOUISIANA SAVINGS ASSOCIATION,
a Louisiana corporation, domiciled and having its principal place of business in the Parish of Calcasieu, Louisiana, represented herein by its undersigned officer, duly authorized, (hereinafter "Louisiana"),
to-wit:
WHEREAS, Bandaries was a partner in the Acadian House Apartments Partnership, to the extent of a 1/3rd interest and the partnership, through its nominee, Acadian House Apartments, Inc., is the owner of the Leasehold Estate on the property shown on Exhibit "A" attached hereto and made a part hereof; and
WHEREAS, Bandaries has sold his 1/3rd interest in the property of the Partnership to Doyle Whittington by Vendor's Lien Deed dated May 31, 1977 and has further executed a Counter Letter Agreement with the said Doyle Whittington; and
WHEREAS, American is the Assignee under that certain Assignment by Bandaries recorded in COB 163, page 643, Entry No. 675680, of the official records of Lafayette Parish, Louisiana, covering all of Bandaries' interest in the partnership and the property of the partnership, a copy of which Assignment is attached hereto and made a part hereof as Exhibit "B"; and
*117 WHEREAS, Louisiana is the owner of that certain Judgment against Bandaries, rendered in proceedings styled "Louisiana Savings Association vs. Ludwig S. Bandaries, Jr.", No. 42,590, 10th Judicial District Court, Parish of Natchitoches, Louisiana, recorded in MOB 355, page 59, Entry No. 679569, of the official records of the Parish of Lafayette, Louisiana, a copy of which Judgment is attached hereto and made a part hereof as Exhibit "C"; and
WHEREAS, both American and Louisiana claim that the proceeds of the sale of Bandaries' interest in the property should be paid to them and a bona fide dispute exists between American and Louisiana as to which is entitled to receive the proceeds of the sale that will accrue to Bandaries; and
WHEREAS, all parties hereto agree that it is in their best interest to allow the proposed sale to be consummated and to convert the interest of Bandaries into cash;
NOW, THEREFORE, THE PARTIES DO AGREE AS FOLLOWS:
1) With full reservation of its rights to be paid from the proceeds of the sale, American will execute and deliver to the Buyer a release of its Assignment, insofar as the property conveyed is concerned and agrees to look to the proceeds of the sale in enforcement of its rights under the Assignment insofar as the property conveyed is concerned.
2) With full reservation of its rights to be paid from the proceeds of the sale, Louisiana will execute and deliver to the Buyer a release of its Judgment, insofar as the property conveyed is concerned and agrees to look to the proceeds of the sale in enforcement of its rights under the Judgment insofar as the property conveyed is concerned.
3) Bandaries agrees that the net proceeds accrued to him by virtue of the Vendor's Lien Deed and Note secured thereby will be deposited in escrow with the Trust Department of the Calcasieu Marine National Bank, Lake Charles, Louisiana, to be invested in Certificates of Deposit or otherwise as directed by American and Louisiana. The funds may not be withdrawn except pursuant to a written agreement signed by American & Louisiana, as to how such funds shall be paid, or pursuant to a final judgment of any court of competent jurisdiction in Louisiana determining the rights of American & Louisiana as to the funds.
4) And Bandaries does hereby pledge and assign to American and Louisiana the net proceeds of the sale, in escrow, to secure the payment of his indebtedness to them to the same extent that Louisiana and American or either of them presently have any claim to the property conveyed pursuant to their respective Assignment and Judgment.
5) Nothing herein is intended nor shall be construed as enlarging or diminishing in any way the respective rights of American and Louisiana insofar as their present position relative to the property conveyed is concerned; it being the intention of the parties that they will release their respective claims to the property and seek to enforce whatever rights they have against the funds in escrow.
6) Bandaries hereby agrees that nothing herein shall be construed as releasing or discharging him from any indebtedness he may presently have to either American or Louisiana; and funds received by either American or Louisiana out of the escrow shall be applied by them to his indebtedness and proper credit given him and any remaining indebtedness shall remain in full force and effect and any other security shall be unaffected thereby.
THUS DONE, READ AND SIGNED in my office in Baton Rouge, Louisiana, in the presence of Mary Anne Spaulding and Barbara A. Smith, competent witnesses, and me, Notary, on this 30th day of June, 1977, in triplicate originals, after reading of the whole.
*118
WITNESSES:
s/ Mary Anne Spaulding s/ Ludwig S. Bandaries, Jr. 
 Mary Anne Spaulding Ludwig S. Bandaries, Jr.
s/ Barbara A. Smith 
 Barbara A. Smith
 BEFORE ME: s/ Sidney D. Fazio
 Sidney D. Fazio, Notary Public
THUS DONE, READ AND SIGNED in my office in Baton Rouge, Louisiana, in the presence of Mary Anne Spaulding and Barbara A. Smith, competent witnesses, and me, Notary, on this 30th day of June, 1977, in triplicate originals, after reading of the whole.
WITNESSES: AMERICAN BANK & TRUST COMPANY
s/ Mary Anne Spaulding BY: s/ A. Larry Tullos 
Mary Anne Spaulding A. Larry Tullos
s/ Barbara A. Smith 
Barbara A. Smith
 BEFORE ME: s/ Sidney D. Fazio
 Sidney D. Fazio, Notary Public
THUS DONE, READ AND SIGNED in my office in Lake Charles, Louisiana, in the presence of s/ Linda Console and s/ Wanda Klare, competent witnesses, and me, Notary, on this 6th day of July, 1977, in triplicate originals, after reading of the whole.
WITNESSES: LOUISIANA SAVINGS ASSOCIATION
s/ Linda R. Console By: s/ J. O. Fogleman 
s/ Wanda Klare 
 BEFORE ME: s/ Edward D. Myrick
 Notary Public
(Exhibit "A" Legal Description Omitted)
CULPEPPER, Judge, dissenting.
I disagree with the fundamental premise by the majority that the February 28, 1975 assignment from Bandaries to American Bank was an assignment of Bandaries' one-third interest in the partnership. In my view, the assignment was only of the income from Bandaries' interest in the partnership.
Looking at the act of assignment itself, we see it states that Bandaries owed the Bank $228,958, for which he had given the Bank his demand note. The act states that "as further and additional security of the aforesaid note, the assignor does `pledge, pawn, transfer, convey, sell and assign' to American Bank all of his right, title and interest in and to the following described property, said property being owned by Acadian House Apartments, a partnership of which partnership assignor warrants that he is an undivided one-third percent owner." The property described is the land on which the apartment buildings are located.
The assignment goes on to state that the partnership is directed to pay to American Bank "all sums of money becoming due and owing to assignor, and that such sums received by the Bank from the partnership *119 `will be applied . . . for the payment of the aforesaid note'." Further, the act states that it is the intent of American Bank that it "receive the entire interest of Bandaries in any income of whatsoever kind produced by said property for any reason whatsoever." The assignment concludes by stating that American Bank does not assume any of the obligations of Bandaries or of the partnership, and that Bandaries agrees to hold the Bank harmless from any debts of himself or the partnership.
As the majority states, the assignment is "ineptly" drawn and should be construed according to the intention of the parties. I think it is clear, both from the provisions of the assignment itself and from the contemporaneous construction of the assignment by the Bank, that it was intended to be an assignment of only the income from Bandaries' interest in the partnership, and not an assignment of the partnership interest itself. It is obvious that the Bank was seeking as security for its loan an assignment of all of the benefits which Bandaries could receive from the partnership, but the Bank did not want an assignment of Bandaries' interest in the partnership, for the obvious reason that the Bank would then have become liable for partnership debts.
I am also strongly persuaded by the Bank's contemporaneous construction of the assignment. Although the assignment was executed on February 28, 1975, it was not recorded until October 21, 1976, which was shortly before Louisiana Savings recorded its judgment on December 28, 1976. During all of this period of time after the Bank received the assignment, it took no steps to exercise the rights of a partner. It took no part in the management of the partnership. The partnership's tax losses were not claimed by the Bank, although the other partners did enjoy substantial tax write-offs.
Of course, the assignment could not convey an interest in the apartment buildings, which were owned of record by the Landrys, nor could it convey to the Bank an interest in the long term lease of the apartment buildings, which lease was owned of record by the nominee corporation. Furthermore, under Edco Properties v. Landry, 371 So.2d 1372 (La.App. 3rd Cir. 1979), a partner cannot sell or assign partnership assets. Only the partnership can do this. Thus, it is clear that Bandaries could not have assigned to American Bank any interest in the apartment buildings or in the lease or in the nominee agreement. The assignment could convey only Bandaries' interest in the partnership and/or the income therefrom. I think it conveys only the income.
The assignment by Bandaries to American Bank of the income from his partnership interest was the assignment of a credit, an incorporeal movable right. LSA-C.C. Article 2642 provides that a transfer of credit takes place between the assignor and the assignee by the giving of title. Article 2643 provides that the assignment is effective as to third parties "after notice has been given to the debtor of a transfer having taken place." American Bank held the assignment dated February 28, 1975 until June 16, 1976, on which date the Bank's attorney gave notice to the third partner, Mr. Landry, of the existence of the assignment. On that date, the Bank's attorney notified Mr. Landry that the Bank held two such assignments, one from Bandaries and the other from Whittington. The Bank's attorney requested that the partnership pay directly to the Bank all sums of money becoming due to these two partners, Bandaries and Whittington. Thus, from the date of this notice, June 16, 1976, the assignment of income was effective as to third parties.
In my view, the recordation by the Bank of the assignment did not create a privilege in favor of the Bank as to the income from the partnership interest, and it did not constitute notice to third parties of the assignment. See Traigle v. AMI, Inc., 280 So.2d 858 (La.App.) which held that the right to receive rental payments is an incorporeal movable right which is not subject to the laws of registry, but is effective as to third parties only under LSA-C.C. Article 2643.
*120 Since the only thing assigned to the Bank was the right to receive any income due to Bandaries by the partnership, it follows that this right terminated when Bandaries sold his interest in the partnership. I find no statutory or jurisprudential authority for a rule that an assignment of income from property is effective against the proceeds of the sale of the property. I conclude the Bank has no privilege nor ownership of the funds in dispute, which represent the proceeds of the sale of Bandaries' interest in the partnership.
Now turning to the claim by Louisiana Savings, the recordation of its money judgment on December 28, 1976 constitutes a judicial mortgage. LSA-C.C. Article 3328 provides "The judicial mortgage may be enforced against all the immovables which the debtor actually owns or may subsequently acquire." (Emphasis supplied) The interest owned by Bandaries in the partnership at the time the judgment was recorded was an incorporeal movable right, not an immovable. Thus, I conclude that Louisiana Savings also has no privilege on the funds in dispute.
Having concluded that neither the Bank nor Louisiana Savings has a privilege on the funds in dispute, where does this leave us? The attorney for Louisiana Savings realized this possibility, and this was undoubtedly the reason he filed a garnishment after the escrow agreement was executed and this suit was filed.
I think we must first look at the escrow agreement which is the subject of this suit for declaratory judgment. It provides that Bandaries assigns to American and to Louisiana Savings the funds held in escrow to secure payment of his indebtedness to them to the extent that either has a claim to the funds. Thus, Bandaries has divested himself of any interest in the funds in escrow.
As I see it, American and Louisiana Savings are general creditors. Neither has a privilege which primes the other. Therefore, the funds should be distributed to them under the provisions of LSA-C.C. Article 3183 which states: "The property of the debtor is [a] common pledge of his creditors, and the proceeds of its sale must be distributed among them ratably, unless there exist among the creditors some lawful causes of preference." Under these provisions, the funds held in escrow should be divided between American and Louisiana Savings ratably in proportion to their respective claims.
For the reasons assigned, I respectfully dissent.
NOTES
[1] A written ground lease (Louisiana Savings Association Exhibit No. 7, Tr. 342-346) was entered into by Wana C. Landry, lessor, and Acadian House Apartments, Inc., lessee, through its president, Henry L. Landry, as of May 25, 1970, as authorized by resolutions of the corporation board of directors on May 9, 1974. Tr. 347-348. The ground lease was signed on May 9, 1974, but a provision in the lease acknowledged that, although signed on that day, the lease was effective as of May 25, 1970, in accordance with a verbal agreement. The resolution, if not the lease also, was recorded in Lafayette Parish on May 16, 1974.

The nominee corporation, Acadian House Apartments, Inc., was incorporated first as Old South Builders, Inc., but the name was changed on March 29, 1969. (P-7) Tr. 106-107.
[2] The signatures of each of the three partners are affixed to the agreement. The nominee agreement was prepared to be executed on behalf of the nominee corporation "by Henry L. Landry, President". Although Henry L. Landry signed as a partner, he failed to sign for the corporation. This failure seems immaterial because all three shareholders of the corporation (including Landry) signed as partners. Therefore, in effect, they ratified or accepted the agreement for the nominee corporation.
[3] The "assignment," accepted by American Bank, appears in the record attached to the petition but appears more legibly at transcript pages 26 through 29.
[4] Paragraph 10 of the petition sets forth that recordation on October 21, 1976, was in Conveyance Book 163, Page 643 and Mortgage Book 150, Page 747, Entry Number 675680, Records of Lafayette Parish. The Entry Number as set forth is listed on the attachment to Exhibit P-4, Tr. 26.
[5] According to paragraph 12 of the petition, the recordation is Mortgage Book 159, Page 419, Entry Number 679569, Records of Lafayette Parish and is attached to the petition as Exhibit 5.
[6] The judgment in favor of Louisiana Savings Association from the Tenth Judicial District Court for Natchitoches Parish was made executory in Calcasieu Parish in a petition filed in this suit on December 12, 1977. The petition, the judgment which followed, the writ of fieri facias ordering the seizure of the rights and credits of Bandaries, the seizure of the escrow funds under garnishment and the proceedings flowing therefrom appear in the record between the transcript pages 33 and 53. The Calcasieu Marine National Bank of Lake Charles answered the garnishment and prayed that the garnishment be dismissed. Tr. 54.
[7] As set forth in appellant's brief before this court, the specification of errors and issues are contended to be as follows:

SPECIFICATIONS OF ERROR
1.
The trial court mistakenly characterized the February 28, 1975 act at issue [the assignment] as both an assignment and a pledge superior to a judicial mortgage recorded at a later date without recognizing the mutual exclusivity or mutually exclusiveness of the two security devices.
2.
The trial court failed to classify that act as either an assignment or pledge, and thereafter consider whether or not the property assigned or pledged by it belonged to the assignor-pledgor at any relevant time.
3.
The trial court further erroneously found on this record that that act transferred ownership to the pledgee-assignee of money from the sale of apartment buildings standing on leased land when the sole evidence established record title to those buildings to be vested in a corporation which was not party to that act.
THE ISSUES
1.
What is the character and effect of the act of February 28, 1975, [the assignment] by which Ludwig S. Bandaries, Jr. did pledge, pawn, transfer, convey, sell and assign to the Bank, as further and additional security, real property owned by a partnership which had no written or recorded partnership agreement?
2.
Did that act of February 28, 1975, create any ownership or right to priority over the judicial mortgage of the Association to the sales proceeds due Bandaries on the sale of that property or over the garnishment of those sales proceeds subsequently in the hands of an escrow agentwith whom they had been placed to hold pending resolution of the disputed claims of the Bank and the Association?
[8] In Scott v. Corkern, supra, the Louisiana Supreme Court distinguished assignment and pledge as follows:

The contracts of pledge and assignment are entirely different and produce varied legal results. Assignment or transfer of credits and other incorporeal rights is a species of sale and is treated as such in our Civil Code, being found in Chapter 12 of Title VII ("Of Sale"). Article 2642 of the Civil Code provides that delivery of an assignment takes place as between transferrer and transferee by the giving of title. Accordingly, a vesting of title in the transferee is essential to an assignment. See Strudwick Funeral Home v. Liberty Ind. Life Ins. Co., La.App., 176 So. 679 and authorities there cited.
On the other hand, a pledge is another sort of contract, having characteristics completely diverse to those of an assignment. It is dealt with under a separate title (Title XX) of our Code and is essentially a contract of security, being defined in Article 3133 as "a contract by which one debtor gives something to his creditor as a security for his debt". This is the antithesis of an assignment (in which title passes) for, in the contract of pledge, the debtor retains the title of the thing which he places, either actually or constructively, in the hands of his creditor as security for the payment of the debt. See Article 3166 of the Civil Code. Hence, it is impossible to have an assignment and a pledge of the same thing at the same time.
[9] LSA-C.C. art. 2836 provides as follows:

Art. 2836. If any part of the stock of this partnership consist of real estate, it must be in writing, and made according to the rules prescribed for the conveyance of real estate, and recorded as is hereafter prescribed with respect to partnership in commendam.
[10] If it be deemed that the partnership of Acadian House Apartments could not acquire title through its agent or mandatary, the nominee corporation, because of non-recordation of the partnership, then the individuals acquired beneficial interests in the title. See authorities cited earlier in this opinion: Gulf Union Mortgage Corp. v. Michael & Barber, supra; American Bank and Trust Co. v. Michael, supra, and McRoberts v. Hayes, supra. With the recordation of American Bank's assignment, it might be maintained that the bank's privilege extended to the corporate assets. We do not find it necessary to ground our holding in this case on such a position.
[11] The nominee corporation device has been approved in Broadmoor Apartments, Inc. v. Collector of Revenue, 336 So.2d 332 (La.App. 1st Cir. 1976), writ refused 339 So.2d 21 (La. 1976). Defendant-appellant, Louisiana Savings, concedes the validity of such a device and the fact that a nominee corporation may act as agent for the owners who set up the corporation to act as their agent. The only variation in the situation here and in Broadmoor Apartments, Inc., is the allegation by Louisiana Savings that the agreement between Acadian Apartments, Inc., and its owners was incomplete because Henry L. Landry did not sign as president.
[12] As part of the package arrangement prescribed by the attorney for the investors for the transfer, the attorney did require that the escrow agreement provide an agreement by American Bank to release its assignment.